[No. A034383. First Dist., Div. Five. Jan. 28, 1987.]

In re MICHAEL D., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
MICHAEL D., Defendant and Appellant.

COUNSEL

Jeff Brown, Public Defender, and George Lazarus, Deputy Public Defender, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Ann K. Jensen and Robert R. Granucci, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

LOW, P. J.— We hold that an order of the juvenile court committing a minor to the California Youth Authority may be validly based on punishment and public safety grounds so long as it will also provide rehabilitative benefit to the minor.

The minor, Michael D., appeals from an order of wardship (Welf. & Inst. Code, § 602)[1] committing him to the California Youth Authority (CYA) after he admitted to one count of sexual battery. (Pen. Code, § 243.4, subd. (a).) The minor contends that the juvenile court judge abused his discretion in committing him to CYA. We affirm.

On January 12, 1986, officers responded to a report that a rape was in progress in the Day Street Park playground. They found a woman being raped by a minor; appellant was observed leaning over the victim near her head and appeared to be holding her down. The minor was leaning over the neck of the victim with his hands out in front, but there was no conclusive evidence he was choking the victim. However, it was clear from the medical evidence that the victim had lacerations and bruises consistent with attempted strangulation. After the incident, the minor showed little remorse for the incident nor any concern for the victim. The minor eventually admitted to one count of sexual battery.

At the dispositional hearing, the minor introduced letters from various people in support of his request to be placed on probation and assigned to the care and custody of his parents. Dr. Paul Walker, a psychologist retained by the minor, reported that Michael did not have a propensity towards violence or sexual sadism. Paul Gibson, an instructor on adolescent sexuality for the Department of Youth Authority, recommended that the minor be placed with his parents and be given therapy as a condition of probation. Gibson communicated his concern that the minor would only increase his involvement and identification with delinquent groups if placed in CYA. In addition, Hillel Maisel, a counselor at juvenile hall who worked in the unit where the minor was housed, testified that the minor was a "young man [of] tremendous potential" whose placement in CYA "would not be for his benefit" because of his high intelligence level and the level of schooling available from CYA.

However, the court-appointed psychologist, Dr. Korpi, found the minor to possess poor judgment and to be "long . . . beyond the control of a reasonable authority," requiring a program to "slow him down [and] provide firm

---

[1] All section references are to the Welfare and Institutions Code.

limits" on his behavior. Further, Dr. Walker expressed doubts about the ability of the minor's parents to place strict limits on the minor's behavior. The minor also admitted that he had a history of alcohol and hallucinogen abuse.

The probation report concluded that "[t]he magnitude and outrageousness of the conduct alone warrants a commitment to the [CYA]." The report concluded that an out-of-home placement (§ 202, subd. (d)(4)) would not be suitable and, "[w]eighing all the factors objectively, . . . in order to afford adaquate [*sic*] protection of the community and to have this minor atone for his participation in this most 'vicious crime,' " recommended CYA placement.

The juvenile court found the minor "guilty" of a "very brutal, heinous and vicious crime, and the conduct in this matter [was] outrageous." The judge also stated that the minor's history of drug and alcohol abuse was a significant factor, and found him "to be a threat and danger to society . . . . [H]is own interests and the interests of society would be best served by his being at this time in the California Youth Authority." He also stated that the minor would benefit from the reformatory educational discipline provided by the CYA.

I

The minor contends that his commitment to CYA was an abuse of discretion by the juvenile court in that (1) the minor was improperly committed to CYA for purposes of retribution rather than rehabilitation; (2) the juvenile court did not properly consider less restrictive alternatives; and (3) the minor could not be benefited by commitment to CYA.

The decision of the juvenile court may be reversed on appeal only upon a showing that the court abused its discretion in committing a minor to CYA. *(In re Eugene R.* (1980) 107 Cal.App.3d 605, 617 [166 Cal.Rptr. 219]; *In re Todd W.* (1979) 96 Cal.App.3d 408, 416 [157 Cal.Rptr. 802].) An appellate court will not lightly substitute its decision for that rendered by the juvenile court. We must indulge all reasonable inferences to support the decision of the juvenile court and will not disturb its findings when there is substantial evidence to support them. *(In re Eugene R., supra,* at p. 617; *In re Michael R.* (1977) 73 Cal.App.3d 327, 332-333 [140 Cal.Rptr. 716].) In determining whether there was substantial evidence to support the commitment, we must examine the record presented at the disposition hearing in light of the purposes of the Juvenile Court Law. (§ 200 et seq.; *In re Todd W., supra,* at pp. 416-417.)

 At the core of the dispute before us is a fundamental disagreement over the purposes of the Juvenile Court Law. Prior to the amending of section 202, California courts have consistently held that "[j]uvenile commitment proceedings are designed for the purposes of rehabilitation and treatment, not punishment." (*In re Aline D.* (1975) 14 Cal.3d 557, 567 [121 Cal.Rptr. 816, 536 P.2d 65].) The *Aline* court derived its conclusion from the terms of former section 502 (now § 202):[2] "to secure for each minor . . . such care and guidance, preferably in the minor's own home, as will serve the spiritual, emotional, mental, and physical welfare of the minor . . . ." (*Id.,* at p. 562.) Commitment to CYA was treated as the placement of last resort "only in the most serious cases after all else has failed." (*In re Eugene R., supra,* 107 Cal.App.3d at p. 617.) A commitment to CYA had to be supported by a determination based upon substantial evidence in the record of (1) probable benefit to the minor (*In re Aline D., supra,* at p. 566; *In re John H.* (1978) 21 Cal.3d 18, 27 [145 Cal.Rptr. 357, 577 P.2d 177]), and (2) that a less restrictive alternative would have been ineffective or inappropriate. (*In re Ricky H.* (1981) 30 Cal.3d 176, 183 [178 Cal.Rptr. 324, 636 P.2d 13].)

In 1984, the Legislature replaced the provisions of section 202 with new language which emphasized different priorities for the juvenile justice system. (Stats. 1984, ch. 756, §§ 1, 2 pp. 2726-2727.) The new provisions recognized punishment as a rehabilitative tool. (§ 202, subd. (b).) Section 202 also shifted its emphasis from a primarily less restrictive alternative approach oriented towards the benefit of the minor to the express "protection and safety of the public" (§ 202, subd. (a); *In re Lawanda L.* (1986) 178 Cal.App.3d 423, 433 [223 Cal.Rptr. 685], review den.), where care, treatment, and guidance shall conform to the interests of public safety and protection. (§ 202, subd. (b).)

Thus, it is clear that the Legislature intended to place greater emphasis on punishment for rehabilitative purposes and on a restrictive commitment as a means of protecting the public safety. This interpretation by no means loses sight of the "rehabilitative objectives" of the Juvenile Court Law. (§ 202, subd. (b).) Because commitment to CYA cannot be based solely on retribution grounds (§ 202, subd. (e)(5)), there must continue to be evidence demonstrating (1) probable benefit to the minor and (2) that less restrictive alternatives are ineffective or inappropriate. However, these must be taken together with the Legislature's purposes in amending the Juvenile Court Law. Consistent with these new objectives, we turn to the record before us.

---

[2] Section 502 was repealed and replaced by section 202. (Stats. 1976, ch. 1068, §§ 1.5, 14, pp. 4741, 4781.)

## II

■ The crime committed was brutal and violent. The victim had been repeatedly raped with the admitted assistance of the minor. Further, even if we accepted the minor's representations that he merely aided the commission of the crime, by not offering help or aid to the victim exhibits a shocking callousness which requires appropriate treatment and guidance. This conclusion is strengthened when one considers the minor's unrepentant and cavalier attitude following his detention and arrest.

Moreover, the court-appointed psychologist concluded that the minor was "beyond parental control" and the psychologist retained by the minor also seriously questioned whether his parents could place the strict limits on his behavior necessary for rehabilitation. The minor had poor social and moral judgment that required firm guidance. The minor also admitted that he has a problem with drugs and alcohol, which the psychologists agree requires substantial help. From all these facts, the trial court could have inferred (1) that the minor's best interests require an environment providing firm, strict discipline for his "out of control" behavior, evidenced by his participation in a violent crime, (2) without such discipline and realignment of his social and moral structure he poses a demonstrated threat to public safety, and (3) that the minor requires intensive rehabilitative treatment for his substance abuse, and (4) the minor's parents were demonstrably incapable of caring for the minor consistent with the minor's best interests in treatment and guidance and the objective of the protection of the public. The minor may not have been suitable for Log Cabin Ranch placement due to his age, nor suitable for an out-of-home placement. In its discretion, the juvenile court chose commitment to CYA over the obviously unsuitable alternative of release to parental custody. There was substantial evidence supporting the trial court's exercise of discretion.

The order of wardship is affirmed.

King, J., and Haning, J., concurred.

Appellant's petition for review by the Supreme Court was denied May 14, 1987.