[No. A128020. First Dist., Div. Four. Dec. 20, 2010.]

In re JOSE T., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
JOSE T., Defendant and Appellant.

**COUNSEL**

Jeffrey A. Glick, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Eric D. Share and Jeffrey M. Bryant, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**RUVOLO, P. J.—**

## I.

## INTRODUCTION

Appellant Jose T. appeals from a jurisdictional and dispositional order in a Welfare and Institutions Code section 602 proceeding declaring wardship and

committing him to the Division of Juvenile Justice (DJJ).[1] Appellant contends that the juvenile court abused its discretion by automatically imposing a suspended DJJ commitment. Appellant also argues the imposition of this sentence was improper because the court did not consider the appropriateness of less restrictive alternative placements or whether the placement would benefit him. Furthermore, appellant argues that his commitment order should be remanded to the juvenile court for it to determine whether he needs an individualized education plan (IEP). Lastly, appellant contends that his DJJ commitment should be modified in order to accurately reflect previous custody credits and to correct a clerical error.

We conclude that the juvenile court automatically, and erroneously, imposed a previously suspended DJJ commitment. Accordingly, we vacate the commitment, remand, and direct the lower court to evaluate the appropriate placement for appellant, including whether to impose the previously suspended DJJ commitment, based upon current factors and circumstances.[2]

## II.

### FACTS AND PROCEDURAL HISTORY

On August 15, 2008, appellant was charged in a Welfare and Institutions Code section 602 petition with one count of robbery (Pen. Code, § 211).[3] The petition was later amended to allege one count of grand theft (§ 487, subd. (c)), which appellant admitted. On December 18, 2008, appellant was adjudged a ward of the court and placed on probation.

On January 29, 2009, appellant was charged in a subsequent Welfare and Institutions Code section 602 petition with one count of robbery (§ 211), one count of aggravated assault (§ 245, subd. (a)(1)), one count of battery (§ 243, subd. (d)) and one count of misdemeanor possession of marijuana on school

---

[1] Effective July 1, 2005, the correctional agency formerly known as the California Youth Authority (CYA) became known as the Division of Juvenile Facilities (DJF). DJF is part of the Division of Juvenile Justice, which in turn is part of the Department of Corrections and Rehabilitation. (Welf. & Inst. Code, § 1710, subd. (a); Pen. Code, § 6001; Gov. Code, §§ 12838, subd. (a), 12838.3, 12838.5, 12838.13.) Statutes that formerly referred to CYA, such as Welfare and Institutions Code sections 731 and 733, now refer to DJF. The parties to this appeal refer to the authority to which appellant was committed as the Division of Juvenile Justice, or DJJ. We will do likewise.

[2] Because we remand for a new disposition hearing, we need not, and do not, address the remaining issues raised by appellant on appeal.

[3] All further undesignated statutory references are to the Penal Code.

grounds (Health & Saf. Code, § 11357, subd. (e)). Appellant admitted the aggravated assault charge, and the other charges were dropped. On May 29, 2009, the court ordered that appellant be placed at Rite of Passage (ROP), with a suspended DJJ commitment.

On November 17, 2009, appellant was charged in a Welfare and Institutions Code section 777 supplemental petition with violating his court-ordered placement by leaving ROP on November 12, 2009, and remaining away without permission. Appellant admitted this violation.

At the January 21, 2010 disposition hearing, the court found that the assault was a Welfare and Institutions Code section 707, subdivision (b) offense and committed appellant to DJJ for a maximum period of four years eight months.

On March 22, 2010, appellant filed a timely notice of appeal.

## III.

## ANALYSIS

### The Court Abused Its Discretion by Automatically Imposing a Suspended DJJ Commitment Without Considering Less Restrictive Alternative Placements or Appellant's Needs

Appellant contends the juvenile court abused its discretion by imposing automatically a suspended DJJ commitment from a previous disposition hearing. We agree.

Between the time of the original May 29, 2009 disposition hearing and the January 21, 2010 disposition hearing, a "Pre-Permanency Review" report was submitted to the court by the probation department on November 4, 2009. In it, the author noted that appellant had been placed with ROP as of September 2009, and reported that his performance at the program had been "outstanding since his placement." The report went on to state that appellant held "Rookie" status, but was expected to receive his next status promotion shortly. Appellant was attending ROP's onsite high school and pursuing credits towards receiving a high school diploma.

A dispositional report was submitted to the court in connection with the pending January 21, 2010 disposition hearing. It noted that, until leaving the program AWOL, appellant had been doing well. While recognizing that appellant needed a structured program to address his ongoing anger management, gang intervention and decisionmaking, and that he was a flight risk, "should he agree to comply with placement, it is believed that he can be successful, as shown during the two months he was at ROP." Therefore, the report recommended that his current placement and probation be continued.

At the January 21, 2010 disposition hearing, the court was informed that appellant would be accepted back at ROP, confirmed again that he had done well there, and that appellant wanted to go back and finish the program. The court replied, "I don't have a problem with him finishing the program . . . ."

However, once the prosecutor reminded the court that appellant had a suspended DJJ commitment, the court stated, "Well, I think that's where he's going then, [counselor], I'm sorry to say that. I usually keep my promises."

"The decision of the juvenile court may be reversed on appeal only upon a showing that the court abused its discretion in committing a minor to [DJJ]." (*In re Michael D.* (1987) 188 Cal.App.3d 1392, 1395 [234 Cal.Rptr. 103].) "An appellate court will not lightly substitute its decision for that rendered by the juvenile court." (*Ibid.*) An appellate court "must indulge all reasonable inferences to support the decision of the juvenile court and will not disturb its findings when there is substantial evidence to support them. [Citations.]" (*Ibid.*) "In determining whether there was substantial evidence to support the commitment, we must examine the record presented at the disposition hearing in light of the purposes of the Juvenile Court Law. . . ." (*Ibid.*, in part citing Welf. & Inst. Code, § 200 et seq.)

A stayed or suspended term of confinement in juvenile cases ordered by a court upon granting probation is generally valid unless lifting of the stay is automatic upon violation of probation. (*In re Chad S.* (1994) 30 Cal.App.4th 607, 613 [35 Cal.Rptr.2d 795] (*Chad S.*).) Before the court can impose the "stayed" commitment, the requirements of Welfare and Institutions Code section 777 (order changing or modifying previous order) must be met. (*Chad S.*, at p. 613.) When the court evaluates the minor after a section 777 petition is filed, it must make required findings that the previous disposition has not been effective in the rehabilitation or protection of the minor, and, if the court chooses a DJJ commitment, the court must be fully satisfied, pursuant to Welfare and Institutions Code section 734, that the mental and physical condition and qualifications of the ward render it probable that the ward will be benefited by the commitment. (*Chad S., supra*, at p. 614.) The

juvenile court must determine the best manner in which to facilitate the rehabilitation of the minor. (*Ibid.*)

*In re Ronnie P.* (1992) 10 Cal.App.4th 1079 [12 Cal.Rptr.2d 875] (*Ronnie P.*) presents a factual situation nearly identical to the present case. At a July 1991 disposition hearing, the juvenile court imposed a suspended DJJ commitment under which the minor would be sent to that institution if he were to engage in any further misconduct. (*Id.* at p. 1086.) At a subsequent September 1991 hearing, the prosecutor called the court's attention to the prior stayed DJJ commitment and its statement about appellant's subsequent misconduct. (*Id.* at p. 1087, fn. 5.) Once informed, the court stated, " 'That's pretty persuasive. . . . [¶] . . . [¶] . . . I told him that if he ran, he's going to go to the Youth Authority. So he's going to the Youth Authority. That's just the way it works.' " (*Ibid.*)

On appeal, Division Two of this court held that (1) unlike adult criminal procedure, there was no statutory procedure allowing a juvenile court to stay, and then at a later time, to impose a previously stayed disposition, and (2) even if permissible, the juvenile court may not do so without "a *thorough* review of dispositional considerations in favor of a previously 'stayed' Youth Authority commitment." (*Ronnie P., supra,* 10 Cal.App.4th at p. 1087, italics added.)

■ Importantly, as to its second holding, the court concluded that "[a] lockstep escalation of dispositions 'falls short of the particularized consideration which underlies the entire juvenile court system.' [Citation.]" (*Ronnie P., supra,* 10 Cal.App.4th at p. 1088.) The court found that the "commitment . . . was improperly 'predetermined' by the 'stayed' Youth Authority commitment purportedly imposed at the previous dispositional hearing." (*Ibid.*) It stated that where the court predetermines the outcome of a hearing without "a complete reassessment of dispositional issues in light of then-prevailing circumstances," it fails to exercise "a discretion conferred and compelled by law," thereby depriving the minor of a fair hearing and fundamental procedural rights. (*Id.* at pp. 1090–1091.)

Division One of this court followed *Ronnie P.*'s second holding in *In re Kazuo G.* (1994) 22 Cal.App.4th 1 [27 Cal.Rptr.2d 155], but found no error in that case. It noted that in imposing the previously stayed disposition, the court was following the current recommendation of the probation department, and by doing so, made a sufficient determination that the prior disposition was *presently* in the best interests of the minor. (*Id.* at pp. 5–6.)

Similarly, in *In re Domanic B.* (1994) 23 Cal.App.4th 366 [28 Cal.Rptr.2d 439], Division Five of this court held that a previously stayed commitment to DJJ could be later imposed if the court made a reasoned determination that the interests of the public and the minor would best be served by the commitment. (*Id.* at pp. 373–375.) "The trial court determined it was appropriate, however, to give appellant one last chance to avoid commitment to CYA. The court also determined that appellant was more likely to succeed in rehabilitating himself, and the public was more likely to be protected from further criminal acts, if appellant had hanging over his head a stayed CYA commitment. We conclude there was no abuse of discretion in imposing such a suspended CYA commitment on appellant. 'There was substantial evidence supporting the trial court's exercise of discretion.' (*In re Michael D., supra,* 188 Cal.App.3d at p. 1397.)" (*In re Domanic B., supra,* at p. 374, fns. omitted.)[4]

We find the reasoning of these opinions to be applicable in this case. The juvenile court's statement at the time of imposing the previously stayed DJJ commitment on appellant indicates a failure to conduct "a complete reassessment of dispositional issues in light of then-prevailing circumstances," and therefore constituted an omission to exercise "a discretion conferred and compelled by law." (*Ronnie P., supra,* 10 Cal.App.4th at pp. 1090–1091.) All reports relating to appellant's progress at ROP were positive, and the probation department recommended his return to the program. The juvenile court expressed a willingness to send appellant back to ROP before being informed that the court had previously stayed a DJJ commitment. Its comment after being informed about the previously stayed commitment, much like the juvenile court's comment in *Ronnie P.,* necessarily leads us to agree with appellant that the disposition imposing that prior commitment was "automatic" and thus, was error.[5]

We reject respondent's contention that the holding in *Ronnie P.* and the cases following it are no longer applicable under *current* Welfare and Institutions Code section 777, which was amended by Proposition 21, and

---

[4] The court in *In re Domanic B.* agreed with *In re Kazuo G.*'s criticism of the first holding in *Ronnie P.,* noting that Welfare and Institutions Code section 777 provides a procedure for the imposition of a previously stayed commitment. (*In re Domanic B., supra,* 23 Cal.App.4th at p. 374, fn. 4.)

[5] Our comments, however, should not be read as expressing any opinion concerning the appropriate disposition on remand. We mean only to inform the juvenile court that its order must be based upon an independent review of the dispositional issues, including the efficacy of less restrictive dispositions, the safety and protection of the public, and the best interests of the minor. (*Ronnie P., supra,* 10 Cal.App.4th at p. 1088.) Furthermore, "a minor's failure to heed such a warning may be taken as some evidence of resistance to rehabilitation." (*Id.* at p. 1090, fn. 8.)

took effect March 8, 2000, following its passage by the electorate on March 7, 2000 (Cal. Const., art. II, § 10, subd. (a)). Respondent argues that since the time of this amendment, a self-executing commitment order is no longer impermissible because now a juvenile court need only determine whether a probation violation has occurred before imposing a previously stayed DJJ commitment. (*In re Melvin J.* (2000) 81 Cal.App.4th 742, 747 [96 Cal.Rptr.2d 917] (*Melvin J.*), disapproved on other grounds in *John L. v. Superior Court* (2004) 33 Cal.4th 158, 181, fn. 7 [14 Cal.Rptr.3d 261, 91 P.3d 205] (*John L.*).)[6] The Attorney General points to the fact that under former section 777, the court could not order a more restrictive placement unless the evidence showed the prior disposition was ineffective in rehabilitating the minor (*In re Jorge Q.* (1997) 54 Cal.App.4th 223, 231–232 [62 Cal.Rptr.2d 535]), while new section 777 eliminates the need for that finding.

■ This change in 2000 did not affect the requirement of a noticed hearing and individualized consideration of the circumstances. The Supreme Court has made it clear since the 2000 amendments to Welfare and Institutions Code section 777 became effective, that the procedural amendments do not affect the standards applicable to determining if a prior stayed or suspended disposition should later be imposed. In *John L., supra,* 33 Cal.4th 158, the court noted: "While Proposition 21's new procedural rules may increase the chance that a probation violation will be found, there has been no material adverse change in the standards used to modify the original disposition, or in the choice of placements available as a result." (*John L., supra,* at p. 166.) More expressly, the court stated that "no other drastic change in the court's dispositional role occurred when Proposition 21 amended section 777. After finding a probation violation and considering any other evidence bearing on disposition, the juvenile court crafts an order that promotes rehabilitation, public safety, and accountability under [Welfare and Institutions Code] section 202—aims the voters explicitly reaffirmed under Proposition 21. [Citation.] . . . Thus, under post-Proposition 21 law, the dispositional order in a section 777 proceeding may make little or no change in probationary terms and placement. [Citation.]" (*John L., supra,* 33 Cal.4th at p. 184.) Therefore, we reject respondent's assertion that procedural changes to section 777 authorized the self-executing imposition of a previously stayed or suspended DJJ commitment.

We also reject respondent's argument that the juvenile court did conduct a reasoned analysis that appellant's best interests would be served by imposing the previously suspended DJJ commitment. In rejecting this contention, we

---

[6] As the court in *Melvin J.* explained, "If . . . the newly amended version of . . . section 777, subdivision (a), approved as part of Proposition 21, applies . . . , there are no further findings required for the juvenile court to make since it . . . already determined that a violation of a probation condition occurred." (*Melvin J., supra,* 81 Cal.App.4th at p. 757.)

are aware that immediately after being informed of the prior suspended commitment, and after noting that "I usually keep my promises," the court recited the following:

"I'll find under [Welfare and Institutions Code section] 726[, subdivision (a)](2) that he's been tried on probation in the custody of his parent, also in placement, and failed to reform.

"Reasonable efforts were made to prevent or eliminate the need for removal, and remaining in the home is contrary to his welfare.

"I'll find under [Welfare and Institutions Code section] 734 that his mental and physical condition and qualifications are such that would render it probable he [will] benefit from the reformatory educational discipline and other programs provided by the [DJJ]. Specifically, he needs to have anger management. He needs to be in a place where he'll stay so he can take advantage of these programs. He also has to have education, which apparently he failed to do over the last period of his life. So the only place that that can happen, where he can stay, is at [DJJ]."

We agree with appellant that, in context, this conclusory recital of the statutory requirements for a DJJ commitment did not constitute the "complete reassessment of dispositional issues in light of then-prevailing circumstances," required by law. (*Ronnie P., supra,* 10 Cal.App.4th at p. 1090.) Thus, this generic recitation is far different from the detailed findings made by the court in *Chad S., supra,* 30 Cal.App.4th 607, a case relied on by respondent in support of its contention that the juvenile court made an adequate assessment of appellant's best interests at the January hearing.

■ Before referring to the findings made by the juvenile court in *Chad S.,* the court reiterated that it was necessary that appropriate findings be made at the time of lifting a stay on a prior commitment: "A stay of a commitment in the juvenile court system is to be understood and applied within the structure of that unique system. It is a warning tool aimed at rehabilitation and is authorized as long as all procedures are followed and appropriate findings *considered and made* when lifting the stay. It cannot be automatic or self-executing." (*Chad S., supra,* 30 Cal.App.4th at p. 614, italics added.)

After noting that the minor had been allowed to testify at the hearing about his change in attitude and willingness to reform, the appellate court went on to quote the lengthy reasoning of the juvenile court in imposing the commitment: " 'I am looking back here in this particular matter of the fact that there

has been a California Youth Authority commitment. The fact that commitment was stayed does not make it any less a commitment. At the time that the minor was previously committed, and I am not looking at that and saying that because he was committed to the California Youth Authority, and it was stayed and now he has committed another violation that he should automatically be committed to the California Youth Authority, that is not the Court's analysis here. The Court's analysis here is that in fact, that does not get the minor's attention with regard to a change of attitude with regard to conduct after that particular proceeding. This Court is left with a serious question of credibility concerning what he may be saying about his attitude at this particular time. You don't stay a [CYA] commitment and give a minor another chance based on local programs, unless the minor is giving you some indication that he is going to turn from the conduct that brought him to this court to begin with. That is a serious commitment, one that the court does not take lightly and a stay of that commitment is of even greater gravity to the Court and the minor was committed to 90 days in the Juvenile Court proceeding or in Juvenile Hall. We then have a situation where the minor is released, and the same [ongoing] problems after his release have occurred after the 90 days, even though the minor should know there was a Youth Authority stay with regard to his conduct. It does not mean that his successful completion of the 90 days in the Hall necessarily negates the fact that he was committed to the Youth Authority and that commitment was stayed. Again, the analyses of this particular court is not that because he was previously committed he should automatically be committed, but what is . . . presented to me at this particular point is that there is a possibility that local programs are going to be successful here because of the change of attitude, and the court has a difficult time believing that there is going to be a change of attitude when that is obviously the same purpose for which the Youth Authority stay was made in the first instance, of the last dispositional proceeding.' " (*Chad S., supra,* 30 Cal.App.4th at pp. 614–615.)[7]

In contrast, the recitation made by the juvenile court here at the time of imposing the previously suspended DJJ commitment was perfunctory. We are satisfied that the court failed in its duty, "[a]fter finding a probation violation and considering any other evidence bearing on disposition . . . [to craft] an order that promotes rehabilitation, public safety, and accountability under [Welfare and Institutions Code] section 202—aims the voters explicitly reaffirmed under Proposition 21. [Citation.]" (*John L., supra,* 33 Cal.4th at p. 184.)

---

[7] The new offense was grand theft. (*Chad S., supra,* 30 Cal.App.4th at p. 610.)

## IV.

## DISPOSITION

The DJJ commitment ordered in this case on January 21, 2010, is hereby vacated, and the matter is remanded to the juvenile court for a new disposition hearing to be conducted in a manner consistent with this opinion.

Sepulveda, J., and Rivera, J., concurred.