Filed 8/24/20  In re Alexis D. CA1/5

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| In re ALEXIS D., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>ALEXIS D.,<br><br>        Defendant and Appellant. | A158530<br><br>(Contra Costa County Super. Ct. No. J17-00946) |

Alexis D. appeals from a dispositional order committing him to the Department of Corrections and Rehabilitation, Division of Juvenile Justice (Division) after he admitted committing second degree robbery (Pen. Code §§ 211, 212.5, subd. (c)) at the age of 17.  He argues the juvenile court abused its discretion by committing him to the Division.  We affirm.

### BACKGROUND

#### A.

Alexis, and two males, identified as David and Carlos, approached the 14-year-old victim, and demanded his "stuff."  David put a handgun to the boy's head, threatened to shoot if he did not

1

cooperate, and told him to "strip." The victim took off his clothes, shoes, glasses, belt, and headphones, and gave them to David. David "pistol whipped" the victim, pointed the gun at him, and demanded his phone. The boy threw his phone on the ground but was later able to retrieve it and run home. Two witnesses said Alexis was carrying a handgun in his waistband during the robbery. When he was arrested, Alexis had five Xanax pills in his possession.

The Contra Costa County District Attorney filed a wardship petition (Welf. & Inst. Code § 602, subd. (a)),[1] alleging that, in addition to the robbery charge, Alexis was armed with a firearm during the offense (Pen. Code § 12022, subd. (a)(1)). Alexis pled no contest to the robbery charge in exchange for dismissal of the firearm enhancement and an agreement that if he successfully completed probation, the count would be reduced to grand theft (*id.*, § 487, subd. (c)).

In its disposition report, the Contra Costa County Probation Department (Probation) rejected ranch placement as insufficiently secure and, instead, recommended Alexis be committed to the Youth Offender Treatment Program (Program) at juvenile hall. The recommendation was based on the gravity of Alexis's offense, as well as an assessment of his needs. The probation officer noted Alexis struggled with truancy and behavioral problems during his three years in high school, where he had earned less than 25 percent of the credits needed for graduation. Alexis reported this was due, in part, to him leaving school one year to work in landscaping to help support his family. Alexis also repeatedly witnessed domestic violence in his home

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

and had been diagnosed with anxiety. He regularly used marijuana and Xanax, without a doctor's prescription, to self-medicate. The probation officer expressed concern regarding Alexis's apparent unwillingness to accept responsibility for his actions and the dangerous association he had established with Carlos, who was a known gang member.

At disposition, the juvenile court adjudged Alexis a ward of the court, indicated his maximum term of confinement was five years, placed him on probation, and ordered him to complete the Program at juvenile hall. Among other conditions of his probation, Alexis was ordered to avoid knowing possession or use of dangerous or deadly weapons, to abstain from knowing use or possession of illegal drugs or alcohol, and to avoid contact with Carlos and David. He was also informed that he was prohibited from owning or possessing a gun before the age of 30. (See Pen. Code, § 29820, subd. (b).)

About a year later, Alexis successfully completed the in-custody portion of the Program, and the court released him on home detention with electronic monitoring for 90 days. Another three months passed, and Alexis was working in landscaping, continuing in family therapy, and consistently testing negative for drugs and alcohol. After being informed that Alexis was continuing to do well in the Program, the court ended his electronic monitoring and continued his probation.

**B.**

Four months after his electronic monitoring ended, Probation alleged Alexis violated the terms of his probation (§ 777) by possessing 300 rounds of ammunition, high-capacity gun magazines, an AR-15 assault rifle, and two Glock pistols. Alexis initially fled and then, when

3

arrested, denied any knowledge of the guns and ammunition found in his home and car. During a search of David's phone, officers found a recording, posted on social media earlier that same month, that showed Alexis, at his home, with two pistols and an assault rifle similar to an AR-15. Officers also found evidence that all three involved in the robbery (Alexis, David, and Carlos) remained in close contact—a screenshot showed the three apparently drinking alcohol and shocking each other with a stun gun.

Alexis admitted the violation and sought return to the Program or a one-year commitment in county jail with referral to its DEUCE substance abuse program. His mother thought home supervision would be the best disposition, so Alexis could keep working.

Probation, on the other hand, recommended Alexis be committed to the Division, where he could be provided a secure commitment and appropriate programming. Specifically, Alexis would receive evidence-based treatment (including cognitive-behavioral interventions and aggression interruption training), educational and vocational training, victim awareness courses, and re-entry planning. The probation officer believed Alexis was a risk to public safety and was at high risk to reoffend. And, even after admitting the probation violation, Alexis reverted to denying possession of the weapons and ammunition. The probation officer explained that returning Alexis to juvenile hall would be inappropriate because he successfully completed the programming offered by the Program, yet failed to implement the tools he had learned by continuing to engage in dangerous and illegal behavior in the community and failing to take responsibility. To best serve the dual goals of rehabilitating Alexis while maintaining public safety, the

4

probation officer concluded, "[the Division] remains the most appropriate and reasonable rehabilitative option given Alexis['s] case problems, risk and needs[.]"

The juvenile court continued Alexis as a ward of the court; found he failed to reform while on probation (§ 726, subd. (a)(2)); found it probable he would benefit from the programs available at the Division; found local resources inappropriate for his rehabilitation; and committed him to the Division for a maximum period of three years.

## DISCUSSION

Alexis contends the juvenile court abused its discretion by committing him to the Division. (See *In re Carl N.* (2008) 160 Cal.App.4th 423, 431-432 [standard of review].) We disagree.

### 1.

Commitment to the Division is the juvenile system's most restrictive permissible sanction, intended for the most serious offenders. (§ 202, subd. (e)(5); *In re Teofilo A.* (1989) 210 Cal.App.3d 571, 578 (*Teofilo A.*).) To be eligible for a Division commitment, the minor must have committed a qualifying violent offense or sex crime. (§§ 731, subd. (a)(4), 733, subd. (c); *In re Greg F.* (2012) 55 Cal.4th 393, 404.)

California courts historically treated commitment to the Division's predecessor, the California Youth Authority, as " 'the placement of last resort.' " (*In re Carl N., supra*, 160 Cal.App.4th at p. 432.) However, "there is no rule that . . . a [Division] placement cannot be ordered unless less restrictive placements have been attempted[.]" (*In re Nicole H.* (2016) 244 Cal.App.4th 1150, 1159.) The focus has shifted to whether the disposition serves the dual goals of the juvenile

5

delinquency laws: (1) to serve the ward's best interests by providing rehabilitative care, treatment, and guidance to enable him or her to be a law-abiding and productive member of the community, and (2) to promote public safety. (§ 202, subds. (a), (b) & (d); *In re Charles G.* (2004) 115 Cal.App.4th 608, 614; *Teofilio A.*, 210 Cal.App.3d at pp. 575-576.) Rehabilitative punishment is appropriate, but retributive punishment remains disallowed. (*In re Eddie M.* (2003) 31 Cal.4th 480, 507; § 202.)

Consistent with those goals, a juvenile court may not commit a ward to the Division unless there is "evidence in the record demonstrating probable benefit to the minor, and evidence supporting a determination that less restrictive alternatives are ineffective or inappropriate." (*Teofilio A., supra,* 210 Cal.App.3d at p. 576; accord, § 734; *In re Angela M.* (2003) 111 Cal.App.4th 1392, 1396.) We review the juvenile court's findings for substantial evidence, keeping the law's dual goals (rehabilitation and public safety) in mind. (*In re Nicole H., supra,* 244 Cal.App.4th at p. 1154; *In re Khalid B.* (2015) 233 Cal.App.4th 1285, 1288.)

**2.**

Alexis argues substantial evidence does not support the juvenile court's findings that less restrictive alternatives would be inappropriate and that he would benefit from a Division commitment. He is wrong.

Contrary to Alexis's argument that he was not screened for other placements, the juvenile court stated at disposition, "We have no local resources for you at this time. You have exhausted them. [¶] You have exhausted the [Program]. I do not find county jail to be a resource that would be treatment-oriented for you, which I think you need, and I

6

have no other resources that would be appropriate for you." This finding was supported by the record.

"In determining the judgment and order to be made in any case in which the minor is found to be a person described in Section 602, the court shall consider, in addition to other relevant and material evidence, (1) the age of the minor, (2) the circumstances and gravity of the offense committed by the minor, and (3) the minor's previous delinquent history." (§ 725.5.) With respect to Division commitments, courts are concerned with the risk inherent in "committing young, unsophisticated youths . . . with individuals who are experienced, sophisticated, criminally oriented types." (*In re Anthony M.* (1981) 116 Cal.App.3d 491, 503.)

Here, the juvenile court had limited options. The crime Alexis committed was violent and degrading.[2] Although he was 17 years old when he committed the crime, Alexis was 19 years old and a high school graduate when the challenged disposition was ordered. Most importantly, Alexis had successfully completed in-custody programming at juvenile hall, but it did not have a lasting rehabilitative impact. Once Alexis was returned to the community and released from electronic monitoring, he reverted to high risk associations and illegal behavior that presented grave danger to the community. The probation officer also observed that Alexis showed criminal sophistication and a lack of insight.

---

[2] Robbery is one of the serious offenses for which the Legislature has deemed a Division commitment potentially appropriate. (§§ 731, subd. (a)(4), 707, subd. (b)(3), 733, subd. (c).)

In these circumstances, it was not unreasonable for the probation officer and court to conclude the Program was ineffective or inappropriate, and that to successfully rehabilitate Alexis needed intensive treatment, along with increased accountability, security, and supervision. Nor was it unreasonable for the court to conclude his needs went beyond those that could be met by a substance abuse program in county jail.

Alexis contends the juvenile court nonetheless did not adequately consider less restrictive alternatives because it failed to consider "*all* possible alternatives." (Italics added.) He relies on the fact that neither the juvenile court nor Probation (in its most recent disposition report) explicitly mentioned out-of-home placements other than county jail and the Program at juvenile hall. According to Alexis, he had "successfully" completed his treatment, was "on the cusp of a full return to society," and his probation violation was merely a "lapse." The argument ignores the reality of the situation. Alexis does not identify any particular option that was feasible and appropriate for a 19-year-old who committed a serious and violent offense and then—after completing an in-custody treatment program—reunited with his violent friends and amassed a small arsenal of weapons.

Given the record, Alexis cannot demonstrate the juvenile court abused its discretion by failing to consider less secure or less therapeutic options, such as a camp placement (rejected at the outset of his wardship). The court gave "particularized consideration" to Alexis's situation (*In re Jose T.* (2010) 191 Cal.App.4th 1142, 1148) and reasonably determined that public safety, as well as Alexis's rehabilitation, would be at risk if he was returned to the Program or

committed to county jail.  The juvenile court adequately explained why even less secure and less therapeutic placements were inappropriate.

Alexis also does not persuade us the juvenile court abused its discretion by failing to consider out-of-state alternatives.  Section 727.1, subdivision (b)(1), mandates a juvenile court shall *not* order out-of-state placement unless "[i]n-state facilities or programs have been determined to be unavailable or inadequate to meet the needs of the minor."

**3.**

Nor did the juvenile court order Division commitment solely because suitable alternatives were unavailable.  (Cf. *In re M.S.* (2009) 174 Cal.App.4th 1241, 1255; *In re Aline D.* (1975) 14 Cal.3d 557, 559, 561-562, superseded by statute on other grounds as stated in *In re Luisa Z.* (2000) 78 Cal.App.4th 978, 987.)  In fact, the juvenile court specifically found Division commitment would benefit Alexis.

That finding was supported by the probation officer's report, which identified and briefly described programs likely to benefit Alexis, such as cognitive behavioral therapy focused on changing negative thought patterns and reducing aggression, and educational and vocational opportunities appropriate for a high school graduate (including community college courses).  (See *In re Carlos J.* (2018) 22 Cal.App.5th 1, 12.)  No more was required.  (*Ibid.*; *In re Jonathan T.* (2008) 166 Cal.App.4th 474, 486.) Substantial evidence supports the juvenile court's finding Alexis would benefit from the commitment.  The juvenile court did not abuse its discretion.

**DISPOSITION**

The disposition order is affirmed.

_____
BURNS, J.

We concur:

_____
JONES, P.J.

_____
NEEDHAM, J.

A158530