[No. E010436. Fourth Dist., Div. Two. Mar. 22, 1993.]

In re ASEAN D., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
ASEAN D., Defendant and Appellant.

COUNSEL

Patricia O'Neill, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, and Rhonda L. Cartwright, Deputy Attorney General, for Plaintiff and Respondent.

OPINION

**DABNEY, J.**—The minor, Asean D., admitted two allegations of robbery (Pen. Code, § 211) and one allegation of the unlawful taking or driving of a vehicle (Veh. Code, § 10851). On this appeal, he argues that the trial court violated Penal Code section 654 by employing consecutive terms for the second robbery and the vehicle taking in computing the maximum term of confinement pursuant to Welfare and Institutions Code section 726. He also asserts that the trial court erred in recommitting him to the Youth Authority after that agency initially rejected him as unsuitable. We agree in part with his arguments concerning the maximum term of confinement, but otherwise affirm the judgment.

### STATEMENT OF FACTS

As the minor admitted the allegations, as discussed below, the facts are but skimpily set forth in the record.[1] According to the probation report, which was based on the police report, the minor and two companions broke into an occupied van in a parking lot. They dragged out the male victim, and one of the three kicked him in the face. Asean D. himself was identified as having been in possession of a handgun, which he used to threaten the female victim. The female was also knocked to the ground. After a search for the keys, the three minors escaped with the van, but were apprehended the next day.

### PROCEDURAL HISTORY

The minor was originally charged with two counts of robbery, both with connected firearm use allegations (Pen. Code, § 12022.5), and one count of the unlawful taking or driving of a vehicle. The People filed a motion pursuant to Welfare and Institutions Code section 707, subdivisions (b) and (c), seeking to have the minor declared not fit for treatment under the juvenile court law.

However, on the date set for hearing, the People withdrew this motion, while the minor withdrew a companion motion pursuant to *Edsel P.* v. *Superior Court* (1985) 165 Cal.App.3d 763 [211 Cal.Rptr. 869].[2] The minor then admitted the robberies and the vehicle taking, and the firearm allegations were dismissed. Although the record is unclear, it appears that this was a negotiated disposition and that it was prompted, on the People's side, by the court's expressed intention to release the minor from custody due to delay.

The trial court elected to commit the minor to the Youth Authority, relying on the violent nature of the offense, the need to demonstrate to the minor and others that such conduct would be harshly dealt with, and the need for an extended period of treatment and rehabilitation. The court

---

[1]We denied respondent's request to augment the record with the transcript of the hearing conducted in the case of one of the minor's coparticipants. Although respondent failed to show that this part of the record was ever formally before the trial court in the instant case, the prosecutor did refer to testimony given by the witnesses in some proceeding, and the judge at the dispositional hearings did appear to demonstrate more familiarity with the facts than would be obtainable from the record before us. It remains unclear, however, whether the trial judge here had presided over the related proceedings.

[2]An "*Edsel P.*" motion is the mechanism by which a juvenile, faced with a Welfare and Institutions Code section 707 petition, may require the People, before proceeding with that motion, to establish a prima facie case that the minor did in fact commit a violation of one of the offenses listed in subdivision (b) of section 707.

computed the maximum confinement time (Welf & Inst. Code, § 726, subd. (c)) at a total of seven years (less credit for time served), being five years for the first robbery, and one-third the mid-term of three years, or one year, for each of the other two offenses.

However, the Youth Authority rejected the minor, and matters resumed before the juvenile court. On November 26, 1991, the People presented testimony by the Youth Authority employee who had recommended that the minor not be accepted. In summary, the minor had received a score of zero on the Youth Authority's grading list; a score under five was considered to indicate that a minor was unsuitable for the authority in the sense that a less rigorous placement appeared more appropriate.[3] While the authority could override the result suggested by the score, especially if the offense were very serious, the employee felt that the gravity of the offense was balanced by the minor's lack of involvement with gangs or drugs, his good behavior in juvenile hall, and his good performance in school.[4] Furthermore, the dismissal of the Welfare and Institutions Code section 707 proceeding and of the armed allegations suggested to the employee that the People had considered Asean to be less culpable than his coparticipants. Thus, she elected to follow the score result and rejected the minor.

However, by the time of the hearing in November, the employee had been informed that the election not to proceed under section 707, and the dropping of the armed allegations, was not the reflection of volitional lenience on the part of the People, but was due to procedural difficulties with the case. She testified that this circumstance, had it been known to her, would have caused her to weigh the seriousness of the offense more heavily in determining whether to override the score result. She also testified that she was now prepared to accept the minor in the Youth Authority. After hearing from the minor—who, despite his earlier admissions, now denied that he had participated in any robbery—the court then reconfirmed its earlier decision and recommitted the minor to the Youth Authority.

---

[3] Asean, 16 at the time of the incident, had no previous juvenile record. He therefore scored straight zeros in the categories of prior sustained petitions, prior sustained serious felony petitions, youthfulness at the time of first offense, number of out-of-home placements, and escapes.

[4] Asean's counsel repeatedly described his client as "doing quite well in school," having "good grades," and "doing very well in school." At the earlier disposition hearing, counsel informed the court that Asean had recently received an A in P.E., B's in welding and art, and "unfortunately" an F in English. We recognize that everything is relative, but a student who receives a flat failing grade in his only academic class can hardly be said to be "doing quite well."

While we look askance at counsel's characterization of the school performance which he specifically presented to the court, we note, in the minor's favor, that the probation report actually indicated that he had recently received passing or better grades in a number of academic subjects.

## DISCUSSION

### A.

The minor first argues that the court should not have recommitted him once the Youth Authority had originally rejected him. His objection is not that the court lacked the power to do so, but that it abused its discretion. He relies on the favorable factors discussed above, and asserts that there was no evidence that he would benefit from the commitment.

We review a commitment decision only for abuse of discretion, and indulge all reasonable inferences to support the decision of the juvenile court. (*In re Michael D.* (1987) 188 Cal.App.3d 1392, 1395 [234 Cal.Rptr. 103]; *In re Eugene R.* (1980) 107 Cal.App.3d 605, 617 [166 Cal.Rptr. 219].) Furthermore, it is clear that a commitment to the Youth Authority may be made in the first instance, without previous resort to less restrictive placements. (*In re Tyrone O.* (1989) 209 Cal.App.3d 145, 151 [257 Cal.Rptr. 134].) Finally, the 1984 amendments to the juvenile court law reflected an increased emphasis on punishment as a tool of rehabilitation, and a concern for the safety of the public. (*In re Michael D., supra,* at p. 1396.) Reviewed under this standard and in light of these principles, the minor's contentions are without merit.

At the time of the original commitment, the trial court expressly found that the minor might need a longer period of treatment than would be locally available. The probation report prepared for the October 7 hearing recommended the Youth Authority, noting that the minor could pursue his welding interests in that setting; thus, a potential benefit was apparent. Furthermore, despite the minor's good record, the viciousness of the attack, during which the minor may have been armed and in which he certainly used great physical force on the victims, and his continuing refusal (despite his formal admission) to take responsibility for the crimes, clearly signalled that he constituted a serious danger to the public unless securely confined. (See *In re Samuel B.* (1986) 184 Cal.App.3d 1100 [229 Cal.Rptr. 378,[5] which approved a Youth Authority placement for a previously well-behaved minor involved in a vicious rape, who unpersuasively insisted on disclaiming responsibility.)

Insofar as the minor relies on the Youth Authority's original decision to reject him, the fact is that it was based at least in part upon a misperception concerning the People's reasons for dropping fitness proceedings and the

---

[5]*Samuel B.* was overruled on other grounds in *People* v. *Hernandez* (1988) 46 Cal.3d 194, 206, footnote 14 [249 Cal.Rptr. 850, 757 P.2d 1013].

gun allegations. At the time of the final disposition, the Youth Authority had agreed to accept him, and the court could properly recommit him.[6] Although, as the minor argues, the robberies represented his first step off the path of virtue,[7] it was a giant one. The trial court did not abuse its discretion.

### B.

■■■ The minor next argues that the court erred in imposing separate terms for both robberies and the vehicle taking or driving, citing Penal Code section 654.[8] ■ The statutory prohibition applies to consecutive, or aggregated, terms calculated under Welfare and Institutions Code section 726, subdivision (c), because that section incorporates Penal Code section 1170.1, subdivision (a), which in turn expressly refers to Penal Code section 654. (*In re Billy M.* (1983) 139 Cal.App.3d 973, 978 [189 Cal.Rptr. 270]; *In re Samuel B., supra,* 184 Cal.App.3d at 1105.)

The People, as is their wont, direct by far the greater part of their attack on this issue to an attempt to persuade us that any error was waived by the failure to raise it at the time the aggregate term was announced. In an effort to put an end to what we viewed as a meritless campaign to persuade us to change long-standing precedent, we recently certified for publication an otherwise unremarkable case on this point, in which we set forth our reasons for believing that the principle that sentencing errors are not waived by failure to object should not be overturned by this court. (*People* v. *Wortman* (1992) 11 Cal.App.4th 650, 652-653 [14 Cal.Rptr.2d 223].) We need not repeat the discussion here.[9]

■ With respect to the two robberies, we agree with the People's brief argument on the merits that the court properly utilized a separate term for the second robbery. Although the minor asserts that the robberies and the vehicle theft constituted one single transaction, it is well established that

---

[6]The minor points out that, after his initial rejection by the Youth Authority, the probation officer recommended a camp placement . . . but *only* if he were rejected for the Youth Authority placement "which he deserves." We fail to see how this grudging acceptance of camp placement as a second-best alternative is at all helpful in showing that the trial court abused its discretion in determining to recommit the minor to the Youth Authority.

[7]At least, the first such step to be recorded.

[8]That section provides in pertinent part "An act or omission which is made punishable in different ways by different provisions of this code may be punished under either of such provisions, but in no case can it be punished under more than one; . . ." Despite its apparent limitation to the Penal Code, it is well established that it applies to penal provisions of other codes. (*People* v. *Djekich* (1991) 229 Cal.App.3d 1213, 1220 [280 Cal.Rptr. 824].)

[9]See also *People* v. *Eastman* (1993) 13 Cal.App.4th 668, 678-680 [16 Cal.Rptr.2d 608], in which we similarly rejected the People's waiver argument with respect to an error in computing presentence credits.

Penal Code section 654 does not bar the imposition of separate punishments for separate crimes of violence committed against separate victims. (*People* v. *Anderson* (1991) 221 Cal.App.3d 331, 338 [270 Cal.Rptr. 516].) The minor's attempt to classify the offense as primarily that of vehicle theft is unavailing; the taking was accomplished by the means of force and violence applied to two separate victims in possession of the van.[10]

██ With respect to the separate term for the vehicle taking or driving (Veh. Code, § 10851), the question is different. Although a small amount of the male victim's personal property was also taken inside the van, it is clear that the robberies were committed for the purpose of taking the vehicle and constituted a single transaction; there was no separate criminal objective in the brutalizing of the victims beyond compelling them to give up their property. (*People* v. *Perez* (1979) 23 Cal.3d 545, 551 [153 Cal.Rptr. 40, 591 P.2d 63]; *People* v. *Beamon* (1973) 8 Cal.3d 625, 637 [105 Cal.Rptr. 681, 504 P.2d 905].) In *People* v. *Bauer* (1969) 1 Cal.3d 368, 377-378 [82 Cal.Rptr. 357, 461 P.2d 637, 37 A.L.R.3d 1398], defendants robbed three women in their home, and then, having left the home, stole a car from the garage for their escape. The court held that the theft was merely incidental to the robbery, and that Penal Code section 654 therefore barred separate punishment for that offense. Here, the vehicle was the actual object of the robbery and was taken from the immediate presence of the victims. ██ ██ The court erred in adding a separate term for the vehicle theft in computing the maximum term.[11]

The order of commitment made on November 26, 1991, is modified to fix a maximum term of confinement of five years, six months, and seventeen

---

[10]Insofar as the minor argues that a specific finding of violence was necessary, we reject the argument. Robbery is by definition a crime of force or threatened violence. The minor's reliance on *People* v. *Robinson* (1988) 198 Cal.App.3d 674 [244 Cal.Rptr. 17] is misplaced; in that case, the jury made specific findings of assault and bodily injury with respect to a *burglary*, and the court held that separate punishment of the burglary *and* the assaults was therefore proper. However, the specific findings were only necessary because burglary, unlike robbery, is not inherently a crime of violence. (See *People* v. *Miller* (1977) 18 Cal.3d 873, 886 [135 Cal.Rptr. 654, 558 P.2d 552].)

Furthermore, by admitting the allegations, the minor impliedly agreed that the facts of the case could be gleaned from the probation officer's report. At the hearings, the minor insisted that he had not participated in any robbery and that he and his companions had peaceably obtained the van from an acquaintance. However, this belated claim of innocence did not entitle him to assert that the victims' recital of facts concerning an event which he claimed not to have witnessed was not accurate.

[11]It could well be argued that the sustained finding on this allegation was also improper. However, any error need not be corrected other than as concerns the maximum term of confinement. A juvenile adjudication is not a conviction, and multiple findings supporting an order of wardship are irrelevant and without consequence, except as noted above. (*In re Robert W.* (1991) 228 Cal.App.3d 32, 34 [279 Cal.Rptr. 625].)

days, thus reflecting the deduction of the one year term derived from the vehicle taking. In all other respects the judgment is affirmed.

Ramirez, P. J., and McKinster, J., concurred.