Filed 3/8/13  In re Gabriel M. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re GABRIEL M., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE, | F065599 |
| Plaintiff and Respondent, | (Super. Ct. No. MJL017689) |
| v. | |
| GABRIEL M., | **OPINION** |
| Defendant and Appellant. | |

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Madera County. Thomas L. Bender, Judge.

Arthur L. Bowie, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Catherine Chatman and Raymond L. Brosterhous II, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]      Before Levy, Acting P.J., Cornell, J. and Poochigian, J.

Appellant, Gabriel M., a minor, admitted an allegation set forth in a juvenile wardship petition (Welf. & Inst. Code, § 602) that he committed an assault by means of force likely to produce great bodily injury, in violation of former Penal Code section 245, subdivision (a)(1).[1] At the disposition hearing, the court adjudged appellant a ward of the court, declared the instant offense to be a misdemeanor and placed appellant on probation with various terms and conditions, including that he serve 30 days in juvenile hall.

On appeal, appellant's sole contention is that the court erred in imposing the juvenile hall condition of probation. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

*Factual Background[2]*

A Madera Police Department report indicated the following: On December 5, 2011, the victim and his sister were walking home from school when appellant approached and told the victim he wanted to fight him. The victim said he did not want to fight, and he and his sister continued walking. At that point, appellant reached around the victim's sister and struck the victim in the face. X-rays revealed that the victim's nose was broken in two places.

The probation officer asked appellant "how he felt about the incident." Appellant responded, "'I don't know how I feel' as he shrugged his shoulders and smirked." Appellant "expressed no remorse for his actions, nor did he appear to accept responsibility for his behavior ...."

---

[1] At the time of the instant offense, Penal Code section 245, subdivision (a) proscribed the "commi[ssion of] an assault upon the person of another with a deadly weapon or instrument other than a firearm or by means of force likely to produce great bodily injury ...." The statute has since been rewritten such that assault by means of force likely to produce great bodily injury is now covered in subdivision (a)(4) of Penal Code section 245.

[2] Our factual summary is taken from the report of the probation officer (RPO).

*Procedural Background*

The wardship petition in the instant case was filed May 7, 2012.[3]  On May 24, at the detention hearing, appellant's mother, in response to the court's question as to how appellant was "doing at home," stated appellant was "doing good"; he had been accepted into Grizzly Youth Academy (GYA), a military boarding school in San Luis Obispo; and he would begin the six-month residential program there on July 14.  A few moments later, the court, speaking to appellant, noted, "So you're going to Grizzly Academy in July."

According to the RPO, GYA is "structured as a 'military boarding school' to promote an academic environment that helps develop leadership, cooperation, and academic skills, while improving self esteem, pride, and confidence."  GYA is "run by the California National Guard" and is located at Camp San Luis Obispo at the National Guard Training Base.

On June 7, at the trial setting hearing, the court asked appellant if he was "still on track to go to the Grizzly Academy."  Appellant answered, "Yes."

On June 11, at the proceeding in which appellant entered his admission, the prosecutor mentioned at the outset that appellant had been "accepted to the Grizzly Academy."  The court questioned whether "Grizzly [is] going to take [appellant]" if appellant admitted the misdemeanor allegation, and appellant responded, "They already accepted me."  The court advised appellant that if he entered his admission, a disposition hearing would be conducted at some point in the future, at which time the court could impose any of a number of possible dispositions, including "boot camp program, time in the hall, group home ...."  Shortly thereafter, appellant entered his admission.

After accepting appellant's admission, the court stated, "I believe the understanding also, Gabriel, is that you'll be allowed to go to the Grizzly Academy....  If

---

**3**      Further references to dates of events are to dates in 2012.

3.

[the probation department is] recommending something different than that, I'll allow [you to] withdraw your admission." The court set the disposition hearing for June 28.

On June 28, the court continued the hearing to July 30. The court rejected the defense request for an earlier date, after defense counsel told the court appellant would be "attending Grizzly Academy, which is a several week program in the San Luis Obispo area starting July 14th."

On July 30, the court continued the disposition hearing again. The court stated, "I ... need an update in the [RPO] regarding this Grizzly Academy, what that actually entails."

The RPO was filed August 1. In it, the probation officer reported the following: GYA "indicated they were not aware that [appellant] was currently pending [c]ourt proceedings," and that it is "against [GYA's] policy to accept a minor/cadet while pending proceedings; nonetheless, they indicated due to [appellant] having already begun the process[,] they will allow [appellant] to continue in the program. They reported [appellant] is doing well in the program ... and tentatively expect [him] to graduate the residential phase of the program on December 15 ...."

The court continued the disposition hearing at least one other time while appellant continued to attend GYA. The disposition hearing was finally held on August 16, after the court agreed that appellant need not be present.

On August 16, the probation officer filed a "Recommended Findings and Orders," recommending that appellant be placed on probation and that he serve 100 hours of community service. (Unnecessary capitalization omitted.) The officer did not recommend that appellant serve any time in custody. At the outset of the August 16 hearing, the court stated: "... I've read the report. I think in a way the recommendation is somewhat lenient. I'm inclined to follow it. I would most likely increase community service hours but follow the recommendation." At that point, the court heard argument from defense counsel, and thereafter, the court also heard from appellant's mother and

4.

the victim's mother. The court then stated: "I'm -- you know, the more I think about it, I think, actually, [appellant] does need to serve some time. I'm not happy that he went to the Grizzly Academy prior to this case being completed and he shouldn't have done that. And I think you knew that, and so he's going to end up serving some time. It's going to be 30 days in the hall, and I'm going to have him do that time when he gets out of the Grizzly Academy."

At that point, defense counsel stated that appellant's mother "was very careful to check with both myself and probation about sending [appellant to GYA]," at which point the following colloquy took place:

"THE COURT: Did anyone check with me? Who's in charge?

"[DEFENSE COUNSEL]: Well --

"THE COURT: Who's in charge?

"[DEFENSE COUNSEL]: You are, your Honor.

"THE COURT: I am. Okay. And no one asked me. End of discussion. He's there. I'm not happy he's there. This case wasn't finished. We hadn't even gone to dispo yet. And now he's over there and everyone is using this as an excuse to be lenient on him. That upsets me, quite honestly. And if I was them, I'd be upset and I can understand why they're upset. Oh, he's over there, you can't touch him now. That's bologna. And it was unprovoked and that kid was hurt, and that shouldn't have happened and your son was a bully. And all these other kids are bullies. That's how I see it, and it needs to stop. And if it doesn't, he's going to be on probation. He violates probation he's going to have a problem with me. I can guarantee you."

Defense counsel acknowledged that "nobody confirmed with [the court]" that appellant would attend GYA before he began the program. Counsel also stated she was not aware the court "did not want [appellant] to attend the Grizzly Academy" and apologized to the court. Counsel further noted that she had learned from "Chief Wise at

the academy" that appellant was "doing very well" and was "showing great promise." There followed the following colloquy:

"THE COURT: Well, you know what, I'm glad he's doing well. [¶] Has he ever apologized for what he's done?

"[APPELLANT'S MOTHER]: He hasn't personally apologized, because I didn't want contact with him. I didn't want to have him --

"THE COURT: Did he ever write a letter saying he was sorry?

"[APPELLANT'S MOTHER]: No, he hasn't, your Honor. [¶] … [¶]

"THE COURT: … that tells me a lot."

## DISCUSSION

Appellant contends the court abused its discretion in imposing the juvenile hall probation condition because, he asserts, his "history with the juvenile justice system" was "brief"; the "criminal nature" of the instant offense was "minimal"; he participated in GYA; the court "failed to seriously consider" the RPO; and there was "no evidence ... that juvenile hall was equipped to provide [appellant] with the necessary services to address his rehabilitation." In addition, appellant challenges the "basis" for the court's imposition of the juvenile hall condition. He argues the court ordered appellant committed to juvenile hall out of "irritation" that appellant "failed to get permission from the court to attend Grizzly Academy," to "show the parties 'Who's in charge,'" and simply to punish appellant.

*Governing Principles*

"The juvenile court is empowered to impose conditions of probation in juvenile cases and has broad discretion when formulating such conditions." (*In re Juan G.* (2003) 112 Cal.App.4th 1, 6, fn. omitted.) Thus, the juvenile court may impose """any reasonable condition that is 'fitting and proper to the end that justice may be done and the reformation and rehabilitation of the ward enhanced.'"" [Citations.]" (*In re Sheena K.* (2007) 40 Cal.4th 875, 889.) "In deciding what probation conditions are appropriate, the

6.

court shall consider not only the circumstances of the offense but also the minor's entire social history. Such conditions are valid and enforceable unless they bear no reasonable relationship to the underlying offense or prohibit conduct that is neither criminal in nature nor related to future criminality. On appeal, the court's exercise of discretion will not be disturbed absent a manifest abuse of discretion." (*In re Juan G.*, at p. 7, fns. omitted.)

Welfare and Institutions Code section 202 (section 202) provides in relevant part: "Minors under the jurisdiction of the juvenile court as a consequence of delinquent conduct shall, in conformity with the interests of public safety and protection, receive care, treatment, and guidance that is consistent with their best interest, that holds them accountable for their behavior, and that is appropriate for their circumstances. This guidance may include punishment that is consistent with the rehabilitative objectives of this chapter." (*Id.*, subd. (b).) Thus, "[u]nder section 202, juvenile proceedings are primarily 'rehabilitative' [citation], and punishment in the form of 'retribution' is disallowed [citation]." (*In re Eddie M.* (2003) 31 Cal.4th 480, 507.) But, "[w]ithin these bounds, the court has broad discretion to choose probation and/or various forms of custodial confinement in order to hold juveniles accountable for their behavior, and to protect the public. ([§ 202,] subd. (e).)" (*Ibid*.) "In 1984, the Legislature amended the statement of purpose found in section 202 of the Welfare and Institutions Code. It now recognizes punishment as a rehabilitative tool and emphasizes the protection and safety of the public. [Citation.] The significance of this change in emphasis is that when we assess the record in light of the purposes of the Juvenile Court Law [citation], we evaluate the exercise of discretion with punishment and public safety and protection in mind. Such was not the case before 1984." (*In re Lorenza M.* (1989) 212 Cal.App.3d 49, 57-58, fn. omitted.)

*Analysis*

Preliminarily, we note that the court's expression of displeasure at appellant's participation in GYA at the August 17 disposition hearing is surprising, given that the court expressed no such displeasure at any of the many earlier proceedings at which the court was aware that appellant was attending GYA. This factor, however, does not establish that the court imposed the juvenile hall condition out of retribution.

At the outset of the August 17 hearing, the court expressed its view that the disposition recommended by the probation officer was not sufficient to hold appellant accountable for his actions. Moreover, the court was entitled to credit the evidence that appellant committed an unprovoked attack, resulting in significant injury, as well as the probation officer's observation that appellant exhibited no remorse. (See *In re Asean D.* (1993) 14 Cal.App.4th 467, 473 [minor's commitment to California Youth Authority (CYA) upheld where his "continuing refusal … to take responsibility for the crimes[] clearly signalled that he constituted a serious danger to the public unless securely confined"]; *In re Michael D.* (1987) 188 Cal.App.3d 1392, 1397 [minor's "unrepentant and cavalier attitude" regarding his offense supported CYA commitment].) On this record, under the principles summarized above and given the purposes of the juvenile court law, requiring that appellant serve 30 days in juvenile hall was well within the court's discretion.

## DISPOSITION

The judgment is affirmed.