Filed 5/6/14  In re George A. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re GEORGE A., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE, | F066908 |
| Plaintiff and Respondent, | (Super. Ct. No. 08CEJ600789) |
| v. | |
| GEORGE A., | **OPINION** |
| Defendant and Appellant. | |

## THE COURT[*]

APPEAL from an order of the Superior Court of Fresno County.  James A. Kelley, Judge.

Jeff Cunan, under appointment by the Court of Appeal, for Plaintiff and Respondent.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez and Lewis A. Martinez, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

_____

[*] Before Cornell, Acting P.J., Gomes, J. and Detjen, J.

George A., a minor at the time of the underlying proceedings, appeals from a dispositional order of the Fresno County Juvenile Court committing him to the California Department of Corrections and Rehabilitation, Division of Juvenile Justice (DJJ).[1] He contends the court abused its discretion by failing to order a less restrictive alternative placement. The claim is unfounded. George's commitment to the DJJ followed multiple sustained juvenile petitions and probation violations, and his unsuccessful participation in other rehabilitative programs. The record clearly shows that the juvenile court weighed and considered the probable benefits of a DJJ commitment against the ineffectiveness of less restrictive placements. Finding no abuse of discretion, we affirm the challenged order.

## FACTUAL AND PROCEDURAL BACKGROUND

George's history of delinquency dates back to September 2003 when, at eight years of age, he was cited by police for a violation of Penal Code section 459 based on his admitted participation in a burglary. In 2008, at the age of 13, George admitted to misdemeanor possession of a weapon in violation of former Penal Code section 12020, subdivision (a) after threatening his teacher with some type of bat or club. He was subsequently placed in a "Level 12" group home.

In 2010, George was arrested for brandishing a knife while threatening school officials. He was booked into juvenile hall and later adjudged a ward of the court pursuant to Welfare and Institutions Code section 602. The wardship petition was

---

[1] As of July 1, 2005, the correctional agency formerly known as the Department of the Youth Authority (or California Youth Authority) became known as the Department of Corrections and Rehabilitation, Division of Juvenile Facilities (DJF). The DJF is part of the DJJ. (Gov. Code, §§ 12838, subd. (a), 12838.5; Pen. Code, § 6001; Welf. & Inst. Code, § 1710, subd. (a).) Statutes that formerly referred to the Department of the Youth Authority now refer to the DJF. However, the parties to this appeal, the juvenile court, case law, and certain of the California Rules of Court, refer to the DJF as the DJJ. (See, e.g., *In re D.J.* (2010) 185 Cal.App.4th 278, 280, fn. 1; Cal. Rules of Court, rule 5.805.) We likewise refer to the DJF as the DJJ.

sustained based on an admitted misdemeanor violation of Penal Code section 417, subdivision (a)(1). George was given credit for 52 days in custody against a maximum six-month period of confinement, placed on probation, and ordered to complete 50 hours of community service.

George did not comply with the terms and conditions of his probation for the 2010 adjudication. He failed to maintain contact with his probation officer, failed to remain in the home of his guardian, failed to attend school, failed to complete his community service, and tested positive for the use of marijuana and methamphetamine. The juvenile court found him to be in violation of probation under Welfare and Institutions Code section 777 in October 2011 and again in January 2012.

In March 2012, George used a fake pistol to commit robbery against a 15-year-old victim from whom he stole a cell phone. Following a contested jurisdictional hearing, he was found to have violated Penal Code section 211, a felony. On June 4, 2012, the juvenile court placed George under the supervision of the probation department until December 2013 and ordered him committed to the New Horizons program at the Fresno County Juvenile Justice Campus for a period not to exceed 365 days. He received credit at that point for 233 days in custody against a maximum confinement period of five years and two months for the robbery.

George's behavioral problems persisted throughout his commitment at New Horizons. He was written up for disciplinary infractions during every month from June 2012 through November 2012, often getting in trouble for altercations with peers and insubordination towards staff members. In mid-December, following a four-week period of satisfactory conduct, George became eligible for the privilege of an eight-hour furlough release from the facility. Two such releases occurred without apparent incident on December 16 and 23, 2012. However, the results of a drug test administered after the second furlough release came back positive for methamphetamine. There was evidently a delay in the reporting of those results, as George was allowed another furlough release

3.

on Christmas day. He did not return at the appropriate time and went missing until January 4, 2013, when he was arrested on a bench warrant.

The misconduct at New Horizons served as the basis for a probation violation petition filed on January 7, 2013. George admitted the allegations in the petition. His defense attorney later filed a "Statement in Mitigation" with the juvenile court asking that it refrain from committing George to the DJJ and instead consider placing him in a program called Turning Point or a similar "dual diagnosis" residential facility which could offer him treatment for substance abuse and psychiatric problems. In support of the request, counsel attached a letter authored by Harold L. Seymour, Ph.D., who opined that George has bipolar disorder as well as substance abuse issues, and thus would benefit more from a dual diagnosis program than a DJJ commitment.

The probation officer recommended George be committed to the DJJ for the following reasons: "The Court and Probation Department have made extensive efforts to rehabilitate the minor such as: short term commitments at JJC, SB 163 Wraparound services, Probation supervision, and the New Horizons Program. This officer feels all of the local less restrictive options available to assist the minor are inappropriate in this matter. The minor has been afforded the highest level of rehabilitative services that this County has to offer and he has failed to reform." It was further noted that George would receive an extensive evaluation at DJJ and have access to more services than were available locally, including drug treatment programs.

On March 20, 2013 the juvenile court ordered George committed to the DJJ. Pursuant to Welfare and Institutions Code section 731, subdivision (b), the court determined the maximum period of confinement to be three years and six months, with credit for 514 days in custody. This timely appeal of the commitment order followed.

## DISCUSSION

George claims the juvenile court erred by ordering his commitment to the DJJ in the absence of substantial evidence to support such a disposition. More specifically, he

4.

argues there is insufficient evidence to support a finding that less restrictive alternatives such as a residential drug treatment program would have been ineffective or inappropriate. We see the record differently.

Appellant's arguments are made in reference to a well-established list of factors applicable to juvenile disposition proceedings. In making a placement determination, the court "shall consider, in addition to other relevant and material evidence, (1) the age of the minor, (2) the circumstances and gravity of the offense committed by the minor, and (3) the minor's previous delinquent history." (Welf. & Inst. Code, § 725.5.) "Additionally, 'there must be evidence in the record demonstrating both a probable benefit to the minor by a [DJJ] commitment and the inappropriateness or ineffectiveness of less restrictive alternatives.'" (*In re Jonathan T.* (2008) 166 Cal.App.4th 474, 485.)

"The appellate court reviews a commitment decision for abuse of discretion, indulging all reasonable inferences to support the juvenile court's decision." (*In re Angela M.* (2003) 111 Cal.App.4th 1392, 1396.) Although a DJJ commitment is normally a placement of last resort, the juvenile court is not required to first exhaust all less restrictive alternatives. (*In re Asean D.* (1993) 14 Cal.App.4th 467, 473; *In re Tyrone O.* (1989) 209 Cal.App.3d 145, 151.) "A DJJ commitment is not an abuse of discretion where the evidence demonstrates a probable benefit to the minor from the commitment and less restrictive alternatives would be ineffective or inappropriate." (*In re M.S.* (2009) 174 Cal.App.4th 1241, 1250.)

George purports to rely on *In re Teofilio A.* (1989) 210 Cal.App.3d 571 (*Teofilio A.*), which is an often-cited case that bears little resemblance to the present matter in terms of factual and procedural circumstances. There, the minor "had no criminal record; his conduct was not aggressive or assaultive; he was not armed; he threatened no one, and did not resist his arrest; his offense was a single $60 sale of cocaine." (*Teofilio A., supra,* 210 Cal.App.3d at p. 578.) The juvenile court in *Teofilio A.* relied exclusively upon the contents of the probation officer's report.

However, the report failed to show that the probation officer considered less restrictive alternatives and did not address why such alternatives would be ineffective or inappropriate. In light of those facts, the appellate court found the record to be "barren on this crucial issue." (*Id*. at p. 577.)

Here, George was nearly 18 years old at the time of the March 2013 disposition hearing and his recidivism was well documented. The juvenile court specifically noted "a ten-year history of committing offenses that started in 2003." He had repeatedly flouted the terms and conditions of his probation for the 2010 adjudication and was still on probation when he offended again in 2012. Placement at New Horizons was a less restrictive alternative commitment for the underlying offense of robbery, yet the minor demonstrated a continual inability or unwillingness to abide by the rules of the program.

As in the briefing on appeal, George's attorney below emphasized his "noble effort" to improve his behavior to the point where he was able to earn furlough releases from New Horizons. The juvenile court pointed out the limitations of this argument: "It shows that he thrives in custody, and then once he gets out of custody, he fails. So … maybe the custodial setting and the structure is what he needs for now until he figures things out. There was some argument by counsel for the minor that his New Horizons time was [successful], but I think the fact that he's here and the fact that he's using [methamphetamine] again shows there was less than 100 percent success."

The court went on to acknowledge the position set forth in counsel's Statement in Mitigation and the recommendations of the psychologist, Dr. Seymour, but ultimately concluded the arguments of the People and the probation officer were more persuasive. The specific findings made at the time of the disposition were as follows: "The Court and the probation officer have considered all local, less restrictive programs and forms of custody and [the Court] is fully satisfied that they are inappropriate dispositions at this time and that the minor can benefit from the various programs provided by CDCR DJJ. The mental and physical conditions of the minor are such as to render it probable that the

minor will benefit by the reformatory and educational discipline or other treatment provided by the CDCR DJJ."

Pursuant to our foregoing discussion and recitation of the underlying factual and procedural background, we conclude the findings of the juvenile court are supported by substantial evidence in the record.

## DISPOSITION

The judgment is affirmed.