Filed 7/24/14  In re C.M. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

| | |
|---|---|
| In re C.M., a Person Coming Under the Juvenile Court Law. | C073579 |
| THE PEOPLE, | (Super. Ct. No. JV132865) |
| Plaintiff and Respondent, | |
| v. | |
| C.M., | |
| Defendant and Appellant. | |

The minor C.M., a ward of the juvenile court, appeals an order committing him to a "Level B" out-of-state placement.  He contends this commitment was an abuse of discretion, because the record does not show in-state placements were unavailable or inadequate to meet his needs, alternative level in-state placements were not actively sought, and out-of-state placement is contrary to the primary objective of juvenile court law.  We disagree and affirm.

1

BACKGROUND

In June 2011, the district attorney filed a juvenile wardship petition (Welf. & Inst. Code, § 602)[1] charging the minor with burglary (Pen. Code, § 459) and theft (Pen. Code, § 484, subd. (a)). The minor admitted a misdemeanor burglary and the juvenile court dismissed the theft charge. The juvenile court placed the minor on six months' probation and released him to his father. The minor's parents refused to pick him up and the minor was taken to the children's receiving home on July 28, 2011.

Approximately one month later, on August 24, 2011, the district attorney filed a petition alleging the minor had violated the conditions of probation (§ 777) by leaving the children's receiving home on six occasions and possessing marijuana. On September 6, 2011, the district attorney filed a subsequent juvenile wardship petition alleging the minor had committed another burglary. The minor admitted the burglary allegation as a misdemeanor and the juvenile court dismissed the violation of probation. The minor was released to his parents with electronic monitoring, under the supervision of probation. Once again, the minor's parents refused to pick the minor up from juvenile hall. The trial court modified the order, omitting the electronic monitoring requirement, and the minor was released to his father.

Within two weeks, on November 1, 2011, the probation officer filed a motion to modify custody status and issue an arrest warrant request because the minor had left his father's home without permission and his whereabouts were unknown. The juvenile court issued the arrest warrant. The minor was arrested on November 8, 2011, and detained in the Sacramento County Youth Detention Facility. The juvenile court ordered the matter referred to the Interagency Management Authorization Committee (IMAC) for

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

a "Level A" (in-state) assessment. The minor remained housed in the juvenile hall pending a suitable Level A placement.

On March 15, 2012, the minor was placed at the Tahoe Turning Point group home. Less than two months later, on May 3, 2012, the group home terminated his placement for "repeated acts of misconduct and failure to follow group home rules." The minor was returned to juvenile hall.

On May 31, 2012, the minor was then placed at Clear View Treatment Center group home in Apple Valley, California. On September 26, 2012, the minor was involved in his third physical altercation at Clear View Treatment Center and was terminated from the group home the following day for "repetitious acts of misconduct." He was transported back to Sacramento County Juvenile Hall.

The probation officer filed a motion to modify custody on October 4, 2012. The probation officer indicated the minor's family was beginning to receive services, including financial assistance, therapy for the minor and the family, and a psychiatric medication/care evaluation for the minor, through EMQ FamiliesFirst "Wraparound." Probation anticipated the program should permit the minor to return home within six months. The trial court granted a motion for custody modification and gave the minor a 26-day home pass to visit his father.

The probation department sent a memorandum to the court indicating the minor's progress in his father's home was positive and recommended placement be terminated and the minor released to the care, custody, and supervision of his father. On November 26, 2012, the court adopted probation's recommendations, terminated the minor's placement, and placed him back with his parents with various conditions of probation.

The district attorney filed another subsequent wardship petition on January 16, 2013, charging the minor with vehicle theft (Veh. Code, § 10851, subd. (a)), felony evading an officer (Veh. Code, § 2800.2, subd, (a)), felony hit and run (Veh. Code,

3

§ 20001, subd. (a)), and misdemeanor driving without a license (Veh. Code, § 12500, subd. (a)). To avoid a traffic stop, the minor drove a car through a residential neighborhood, in front of an elementary school, at speeds between 60 to 90 miles per hour. He ran through approximately 13 stop signs and 2 red lights. He was involved in two hit-and-run collisions, one of which left a woman injured. The two crash victims were Patsy Labotzke and Gursaran Brarrad. Brarrad's truck was totaled after the accident. An ambulance took Labotzke to the hopsital, she sustained bruising and muscle soreness, and was regularly taking muscle spasm medication since the accident. The car Labotzke was driving sustained over $10,000 in damage. The minor admitted to vehicle theft and felony hit and run and the remaining counts were dismissed. The juvenile court held a contested disposition hearing.

Prior to the hearing, the juvenile court directed probation to have the minor evaluated by the IMAC for out-of-state Level B placement. The IMAC recommended the minor be placed in a Level B placement, specifically Clarinda Academy in Iowa. The recommendation was based "in large part on the seriousness of the current pending matter. The committee indicated the minor's actions represent a reckless disregard for the safety of the community causing injuries to one victim as well as significant financial loss to others. The committee noted minor's actions had the clear capacity for loss of life. The minor has not responded to the Court's previous interventions and appears unwilling or unable to modify his behavior. This recommendation is based on the minor's very significant substance abuse problem in which he is in need of a long-term treatment program. The minor is in need of a higher level of structure and accountability for his conduct." The IMAC believed an in-state program was not in the minor's best interest as he had already had three failed placements within the state and his escalating pattern of conduct suggested further placement within the state would be inadequate to meet his needs and provide community protection. "Furthermore, the influence of the minor's father appears to enable the minor and minimize his actions. The committee

4

noted the father went so far as to state to them 'Where ever you place him, he will run, and I will pick him up.' Therefore the Clarinda Academy program was favored in part due to its remote location. The program will provide the minor with a high level of structure, substance abuse counseling, therapeutic interventions, and educational programming."

At the hearing, a family service coordinator from EMQ FamiliesFirst, Jocelyn O'Neal, and a skills trainer from EMQ FamiliesFirst, Harold Humerickhouse, testified. Each had worked with the minor in January of 2013, prior to his arrest for the current offense. O'Neal and Humerickhouse met with the minor in October 2012 to identify the services and programs which would best serve the minor. They decided to continue medication management, outpatient substance abuse, and offer father services. They were just beginning to build a plan when the minor was released to his father. The services continued after the minor was arrested again in mid-January and the services could continue if he were released to his father. Humerickhouse was working with the minor on anger management and anxiety issues.

Mother and father also both testified at the hearing. Although mother had a strained relationship with the minor, she did not believe an out-of-state placement was necessary. She believed there were available facilities in California. She acknowledged she was afraid of the minor because of his behavior, including hitting her. She did not know whether a residential placement would be necessary because nothing had worked to correct the minor's behavior. However, she felt out-of-state placement would be too far for communication and visits, and the chances of improving her relationship were better if he remained in the state. Father also opposed the minor being placed out of state. He agreed the minor had "issues," and that the minor had left group home placements in the past because he needed to "cool down." Father did not think the minor needed a Level A placement, but that a Wraparound program like EMQ FamiliesFirst would be sufficient to

5

meet his needs. The minor agreed there was "no point" in sending him out of state because the Wraparound services through EMQ FamiliesFirst would benefit him.

The trial court considered the testimony and the record in the case, including the IMAC evaluation and recommendation. The trial court noted, "Given the seriousness of the instant matter and what can certainly be considered as reckless disregard for the safety of the community and the fact that we have tried numerous other corrective measures particularly since 2011 with [the minor] including multiple level A group homes; and yet, [the minor's] conduct has escalated, and here we are as he is in court again pending delinquency disposition. [¶] The bottom line is that what we've tried before is not working. It is not sufficient. As Mom said, nothing has worked. Whether the failures are exclusively [the minor's] or whether the system has contributed or whether the system hasn't done enough for him or whether other factors may have a role, the bottom line is the same, and that is that [the minor] needs and deserves a higher level of structure and accountability for his conduct. [¶] The Clarinda Academy is slated to provide him a high level of structure. As [defense counsel] stated, the law does require [the court] to determine that placement in an out-of-state group home is necessary when in-state facilities or programs have been determined to be unavailable or inadequate to meet the needs of the minor. My determination today is that in-state facilities are inadequate to meet [the minor's] needs at this time." The juvenile court found that the minor had been under probation department supervisions for approximately 20 months, such supervision had failed, the minor had received counseling services from several entities without success, and the minor had been subject to "informal court probation, juvenile hall, wardship, level A placements, plural, and home supervision." Based on these facts, the juvenile court found there were no additional placement services that could be offered to prevent the minor's removal, reasonable efforts had been made to prevent or eliminate the need for the minor's removal from parental custody, continuance in his parents' home would be contrary to the minor's welfare, and the parents had failed

6

or neglected to provide proper maintenance and training for the minor. The court further found in-state facilities were unavailable or inadequate to meet the minor's needs, institutional care in another jurisdiction was in his best interests and would not produce undue hardship. Accordingly the court found the out-of-state residential treatment program met the requirements of section 7911.1 of the Family Code.

DISCUSSION

The minor contends the juvenile court abused its discretion in ordering him placed in an out-of-state facility. He claims there is not substantial evidence to support the conclusion that in-state facilities are unavailable or inadequate to meet his needs, his delinquency history did not require high-level placement, and his placement out of state thwarts a primary purpose of juvenile court law, to preserve family ties.

Under section 727.1, the juvenile court must choose the most appropriate placement for a minor consistent with the minor's special needs and best interests. (§ 727.1, subd. (a).) The juvenile court may not order the minor placed out of state, unless the court finds in-state facilities or programs are unavailable or inadequate to meet the minor's needs. (§ 727.1, subd. (b).)

" 'We review a juvenile court's commitment decision for abuse of discretion, indulging all reasonable inferences to support its decision.' " (*In re Antoine D*. (2006) 137 Cal.App.4th 1314, 1320.) " '[D]iscretion is abused whenever the court exceeds the bounds of reason, all of the circumstances being considered.' " (*In re Carl N*. (2008) 160 Cal.App.4th 423, 432, quoting *People v. Giminez* (1975) 14 Cal.3d 68, 72.) "We must indulge all reasonable inferences to support the decision of the juvenile court and will not disturb its findings when there is substantial evidence to support them. [Citations.] In determining whether there was substantial evidence to support the commitment, we must examine the record presented at the disposition hearing in light of the purposes of the Juvenile Court Law. [Citations.]" (*In re Michael D*. (1987) 188 Cal.App.3d 1392, 1395; see *In re Asean D*. (1993) 14 Cal.App.4th 467, 473.) These

7

purposes include the best interests of the child, rehabilitation, the protection and safety of the public, and punishment. (See § 202, subds. (a), (b); *In re S.S.* (1995) 37 Cal.App.4th 543, 550; *In re Michael D.*, *supra*, 188 Cal.App.3d at p. 1396; *In re Asean D., supra*, 14 Cal.App.4th at p. 473.)

Here, the minor had multiple failed placements, both in his parents' home and in Level A placements. He absconded from the children's receiving home and possessed marijuana; he was placed with his parents and within two weeks left the home without permission; and, he was placed in two Level A placements and terminated from each for repeated acts of misconduct. He was placed with his parents and within two months committed his most recent and serious offenses. These offenses involved significant financial losses for the victims and an exhibited reckless disregard for the safety of others. The IMAC recommended a Level B placement, based largely on the seriousness of these offenses, as well as the minor's failure to respond to previous interventions. The IMAC also noted concerns with respect to father's influence on the minor, and believed the remote location of the Clarinda Academy would ultimately be in the minor's best interests. The court noted this history, considered the multiple Level A placements, and the minor's escalating conduct. The court also noted the minor had been tried in numerous different levels of structured placements and received services from several entities, all to no avail. Lastly, contrary to the minor's claim, the court was not required to actively seek alternative level in-state placements. (*In re Oscar A.* (2013) 217 Cal.App.4th 750, 757.)

The minor's history and the IMAC recommendation support the trial court's finding that in-state facilities were inadequate to meet the minor's needs. The record also supports the conclusion that out-of-state placement was in the minor's best interest, would best support the minor's rehabilitation, and serve the interest of public safety.

DISPOSITION

The Level B placement order of the juvenile court is affirmed.


    BLEASE    , Acting P. J.


We concur:


    HULL    , J.


    MURRAY    , J.

9