Filed 9/28/15  In re M.R. CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yolo)

----

| | |
|---|---|
| In re M. R., a Person Coming Under the Juvenile Court Law. | C077198 |
| THE PEOPLE, | (Super. Ct. Nos. JD09030, JD10110, JD13350) |
| Plaintiff and Respondent, | |
| v. | |
| M. R., | |
| Defendant and Appellant. | |

Minor M. R. contends the juvenile court abused its discretion by committing him to the Department of Corrections and Rehabilitation, Division of Juvenile Justice (DJJ). We affirm.

1

FACTUAL AND PROCEDURAL BACKGROUND

In January 2009, the Yolo County District Attorney's Office (Yolo County D.A.) filed a Welfare and Institutions Code[1] section 602 petition alleging the minor committed first degree burglary. As a result, in March 2009, the minor was placed on section 654.2 informal probation.

In January 2010, the Yolo County D.A. filed an amended section 602 petition, adding new allegations. Several days later, the petition was amended a second time. The minor admitted to the allegations of trespassing, petty theft, and second degree burglary, with a maximum term of confinement totaling three years four months. The juvenile court terminated the minor's probation and dismissed the remaining allegations.

In February 2010, the minor was adjudged a ward of the court and placed in his grandmother's custody. The juvenile court ordered the minor to complete six days in the juvenile work project, imposed gang conditions, and ordered the minor to pay a restitution fine.

On March 12, 2010, the Yolo County D.A. filed a new section 602 petition alleging the minor committed second degree robbery, conspiracy, and assault by means likely to cause great bodily injury. The minor admitted the assault allegation and the juvenile court determined the aggregate maximum confinement term to be five years. The court placed the minor in the custody of his mother and continued him on probation. The court ordered the minor to serve 120 days in detention, and also ordered the probation department to look into counseling and other services for the minor.

Between July 1, 2010, and November 13, 2012, the minor violated his probation seven times; the juvenile court continued the minor on probation each time. During that

_____

[1] Undesignated statutory references are to the Welfare and Institutions Code.

2

same time period, the minor absconded from the Trinity Youth Center, Harrison Group Home, the Excel Center, and his foster family.

On June 12, 2013, a third section 602 petition was filed in Sacramento County. The Sacramento County District Attorney's Office (Sacramento County D.A.) alleged the minor committed assault by means of force likely to produce great bodily injury, personally inflicted great bodily injury, and committed the crime for the benefit of a criminal street gang. The Sacramento County D.A. also alleged the minor was participating in a criminal street gang, disturbing a public school, fighting and using offensive words, and possessed tobacco.

The minor admitted to the assault charge (as a nonstrike felony) and participating in a criminal street gang (as a misdemeanor). The remaining allegations were dismissed and the matter was transferred to Yolo County for disposition.

At a dispositional hearing in Yolo County on January 6, 2014, the juvenile court approved the minor's placement at KYJO Enterprises Group Home (KYJO) or "Leroy Haines." Six months later, on June 9, 2014, a second amended notice of hearing was filed alleging the minor committed eighteen separate probation violations while in his placement at KYJO. The minor admitted to failing his placement. He admitted hitting a staff member in the back of the head while the staff member was driving, testing positive for THC, and throwing a pool ball at a staff member. The court dismissed the remaining violations.

On July 10, 2014, the juvenile court committed the minor to DJJ for a maximum confinement term of five years four months (less 788 days for time served). The court explained that back in 2010 "we tried . . . to put [the minor] in a situation where we could help him. And it hasn't changed over the years. We have tried, all of us, to identify programs, services, options, approaches that would help him." The court also noted that the minor has run from nearly every placement and that when he last appeared in court, the minor was told the placement in KYJO was his last chance to avoid DJJ.

3

The court expressed concern about the minor's anger and "his behavior in acting out that anger . . . ." In particular, the court acknowledged the minor was lucky he did not cause an accident when he hit a staff member in the back of the head while the staff member was driving, and that the minor missed when he threw a pool ball at another staff member. These acts of anger, the court said, could have resulted in someone being seriously injured.

The court addressed the minor's concern that DJJ placement would "set him back." The court expressed its firm belief that while DJJ was "not perfect," the minor could benefit from DJJ as others have. The court even gave the minor examples of young men placed in DJJ who were now successful members of society.

DISCUSSION

The minor contends the juvenile court abused its discretion by committing him to DJJ because "there was no probable benefit and less restrictive alternatives were appropriate." We are not persuaded.

In making a sentencing decision under the juvenile court law, the court "shall consider the safety and protection of the public, the importance of redressing injuries to victims, and the best interests of the minor." (§ 202, subd. (d).)

"The appellate court reviews a commitment decision for abuse of discretion, indulging all reasonable inferences to support the juvenile court's decision. [Citations.] Nonetheless, there must be evidence in the record demonstrating both a probable benefit to the minor by a [DJJ] commitment and the inappropriateness or ineffectiveness of less restrictive alternatives. [Citations.] A [DJJ] commitment may be considered, however, without previous resort to less restrictive placements." (*In re Angela M.* (2003) 111 Cal.App.4th 1392, 1396.) Indeed, the juvenile court may make such a commitment "in the first instance." (*In re Asean D.* (1993) 14 Cal.App.4th 467, 473.) "Nor does the court necessarily abuse its discretion by ordering the most restrictive placement before

4

other options have been tried." (*In re Eddie M.* (2003) 31 Cal.4th 480, 507.) Under this standard, the juvenile court's sentencing decision was well within its discretion.

The minor had a criminal record going back more than four years, during which many less restrictive alternatives were tried and all of which failed to rehabilitate the minor. The minor repeatedly violated his probation and absconded from nearly every placement. The minor's offenses continued to demonstrate unresolved anger, a willingness for violence, and a complete lack of respect for authority, rules, or the law. The minor was given multiple opportunities and services to aid him in rehabilitating, he failed to take advantage of any of them. Indeed, as noted by the probation department, while under the court's supervision, the minor's criminal behavior had only increased, putting others at risk. All of these facts showed, as the juvenile court found, a DJJ commitment was justified both to rehabilitate the minor and to protect society.

The minor asserts DJJ will not offer him probable benefit because he is a teenage parent and wants to be involved in his child's life and "[t]here is no mention of a parenting program in any of the DJJ documents." Whether there is mention of a parenting program in the DJJ documents, nothing in the record suggests a parenting program will not be available to the minor while he is committed to DJJ. Moreover, the minor cites no authority to support the assertion that the lack of a parenting program renders DJJ an inappropriate placement under these circumstances.

The minor also contends commitment to DJJ "would likely exacerbate [his] anger management issues, not resolve them," and that housing him with gang members would "open[] him up to significant liability . . . ." We, like the juvenile court, are not persuaded. As the juvenile court noted: "DJJ is not perfect . . . there have been issues. But the Court also is aware that other placement facilities, . . . have issues. There is no perfect placement." Courts are not free to disregard the sentencing laws or their objectives of trying to rehabilitate juvenile offenders while punishing their offenses and protecting the public simply because there may be shortcomings at DJJ.

5

On this record, the juvenile court's order committing the minor to DJJ was a proper exercise of discretion.

## DISPOSITION

The order of commitment to DJJ is affirmed.


                                                    _____ROBIE_____, J.


We concur:


_____BLEASE_____, Acting P. J.


_____MURRAY_____, J.