Filed 10/19/20  In re E.M. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re E.M., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE, | E073554 |
| Plaintiff and Respondent, | (Super.Ct.No. J280154) |
| v. | OPINION |
| E.M., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Pamela P. King, Judge.  Affirmed.

Johanna R. Pirko, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland, Scott C. Taylor and Amanda Lloyd, Deputy Attorneys General, for Plaintiff and Respondent.

1

The San Bernardino County District Attorney's Office filed an amended Welfare and Institutions Code section 602 petition against defendant and appellant E.M.[1] (minor), alleging one count of second degree robbery while armed with a handgun (Pen. Code, §§ 211, 12022, subd. (a)(1), count 1), two additional counts of second degree robbery (Pen. Code, § 211, counts 3 & 5), and three counts of assault with a firearm (Pen. Code, § 245, subd. (a)(2), counts 2, 4, & 6). A juvenile court found that he came within Welfare and Institutions Code section 602 and detained him in juvenile hall pending further proceedings. Minor admitted the allegation in count 1, and the court accordingly found the allegation true. In exchange, the court dismissed the enhancement attached to count 1, as well as counts 2 through 6, on the People's motion. The court committed minor to the Department of Corrections and Rehabilitation, Division of Juvenile Facilities (DJF)[2], for the maximum term of five years.

On appeal, minor argues the court abused its discretion in committing him to DJF. We affirm.

## FACTUAL BACKGROUND

On March 5, 2019, minor entered a gas station, pointed a gun at the cashier, and demanded money. In fear for her life, the cashier gave him the money in the register, and

---

[1] Although E.M. is no longer a minor, we will refer to him as "minor" in this opinion to avoid any confusion.

[2] The agency was formerly called the Division of Juvenile Justice (DJJ). The respondent's brief refers to it as the DJJ, but we will call the agency the DJF.

he fled on foot.  About 30 minutes later, minor entered a different gas station, pointed a gun at the cashier, and demanded money.  The cashier gave him $200, and he fled on foot.

On March 8, 2019, minor and his cohort entered a fast food restaurant and acted as if they were going to order food at the counter.  Minor's cohort pointed a gun at the cashier and ordered her to open the cash register and get on the ground.  Minor jumped over the counter and grabbed all the money from the register.  A police officer observed him and his cohort running from the restaurant.  Minor was apprehended a short distance away and was found to be in possession of approximately $300.

## DISCUSSION

### The Juvenile Court Properly Committed Minor to DJF

Minor argues that the court abused its discretion in committing him to DJF, since it placed undue emphasis on the circumstances of the crimes and failed to adequately consider less restrictive alternatives.  We find no abuse of discretion.

A. *Background*

The court held a contested dispositional hearing, and the evidence submitted included the probation officer's reports and recommendation and minor's juvenile hall behavior summaries.  The probation report discussed minor's background and showed that he admitted to drinking beer or hard liquor three to four times a week and using marijuana every day since he was 14 or 15 years old.  He also had been using Xanax twice a week since he was 15.

3

The probation officer's report indicated that minor was first declared a ward of the court in December 2016 for a sustained allegation of possessing concentrated cannabis. (Health & Saf. Code, § 11357, subd. (a).) He was continued a ward in June 2017 for a sustained allegation of trespassing (Pen. Code, § 602, subd. (k)) but was discharged as a ward in December 2017. Seven months later, minor was placed on informal probation for the charge of possessing a weapon on school grounds. (Pen. Code, § 626.10.) He completed his grant of probation on January 7, 2019, and subsequently committed the current robberies in March 2019.

The detention behavior summaries showed that minor was involved in several "code reds."[3] He once claimed to be part of the "Latin Kings," and he and four other peers "jumped" another youth and yelled out racial slurs. On another day, he refused to go to his room two separate times. Additionally, minor was disrespectful to staff members, made inappropriate comments to female staff members, refused to follow directives, and did not follow unit structure.

Minor's probation officer (the probation officer) reported that the Gateway Program (Gateway) was a residential program with an 18-month commitment. It offered rehabilitation services, programs to build social skills and develop independent living skills, and vocational education. The probation officer submitted a referral to Gateway on April 23, 2019. However, Gateway rejected minor because he had "displayed a

---

[3] The record does not appear to contain a definition of "code reds." However, minor's probation officer testified at the dispositional hearing that minor had several code reds, in the context of her describing his detention behavior summaries as "fairly poor."

4

pattern of increasingly serious violent crimes and use of a firearm and threats of bodily harm," and he lacked the maturity and stability to complete the program. In view of his charges, immaturity, criminal history, lack of compliance, and threats/acts of violence toward authority and peers, Gateway concluded that minor was "beyond rehabilitation and services offered at Gateway."

The probation officer spoke with an intake specialist at DJF, who said minor could receive services for up to five years, with a baseline parole date of two years from acceptance. The programs available included aggression interruption training, which focused on improving social skills, considering other people's perspectives, and anger control; and counterpoint, which was a cognitive behavioral program for male offenders at risk of reoffending. DJF also offered a substance abuse program.

The probation officer testified at the contested dispositional hearing and recommended that minor be committed to DJF. She said minor's criminal history indicated a pattern of increasingly violent and dangerous crimes, and she was concerned about the safety of the community. She compared the programs at Gateway and DJF and opined that DJF would be better for him since it offered more extensive programming, and he would be there for a longer period of time. She said the fact that Gateway declined to accept minor into its program was a significant factor in her conclusion that DJF was the appropriate disposition for him.

The minor also presented evidence, including but not limited to, the testimony of a social services representative from the Public Defender's Office. She testified the minor could receive appropriate services through a group home placement or placement in his

5

mother's home coupled with a period of formal probation. However, the representative's testimony did not take into account the three armed robberies that were the subject of the current petition.

B. *Standard of Review*

"We review a commitment decision only for abuse of discretion, and indulge all reasonable inferences to support the decision of the juvenile court." (*In re Asean D.* (1993) 14 Cal.App.4th 467, 473; see *In re Michael D.* (1987) 188 Cal.App.3d 1392, 1395.) An appellate court will not lightly substitute its decision for that of the juvenile court, and the decision of the court will not be disturbed unless unsupported by substantial evidence. (*In re Michael D.*, at p. 1395.)

C. *There Was No Abuse of Discretion*

In determining placement in a juvenile delinquency case, the court focuses on the dual concerns of the best interests of the minor and the need to protect the public. (*In re Jimmy P.* (1996) 50 Cal.App.4th 1679, 1684.) The 1984 amendments to the juvenile court law reflected an increased emphasis on punishment as a tool of rehabilitation and a concern for the protection and safety of the public. (*In re Michael D.*, *supra*, 188 Cal.App.3d at p. 1396.) Since retribution must not be the sole reason for punishment, there must be evidence demonstrating probable benefit to the minor and the inappropriateness or ineffectiveness of the less restrictive alternatives. (*Ibid.*; *In re Angela M.* (2003) 111 Cal.App.4th 1392, 1396.) The court may consider a commitment to DJF without first having tried less restrictive placements. (*In re Asean D.*, *supra*, 14 Cal.App.4th at p. 473.)

6

Based on the record before us, we conclude the court's decision to commit minor to DJF was not an abuse of discretion. Minor's claim that the court placed undue emphasis on the seriousness of the current offense, without properly considering less restrictive placements such as Gateway, is simply belied by the record. The record demonstrates that the court based its decision on several factors. It first discussed minor's behavior summaries and noted that he had multiple code reds involving the use of racial slurs, assaultive conduct, antisocial attitudes, and inappropriate comments to female staff members. The court next observed that minor had significant substance abuse issues that needed to be addressed. It also observed that he had several incidents involving the use of weapons, including the current robberies.

The court considered both Gateway and DJF as potential dispositions. It noted that Gateway rejected minor because his "rehabilitative needs [were] greater than they [could] address with their programming," and because he would pose a danger to his peers, as well as to the community in their program. The court stated, "I don't take lightly [Gateway's] assessment that they believe that they would be putting their own staff and your peers at some risk," given their experience working with similar youth. The court added that minor had been in juvenile hall for five months and had not shown any consistent improvement in programming that was similar to what would be available at Gateway. The court acknowledged that defense counsel argued other youths with robbery true findings had previously gone to Gateway; however, it noted there were "different degrees of a robbery" and found that minor's robberies were the most serious and dangerous type since they involved the use of a loaded weapon pointed at the

victims. Thus, the court agreed with Gateway that minor posed a greater risk than other youths in their program.

With regard to the probable benefit minor would obtain from a DJF commitment, the court found that the programming available there was more comprehensive and likely to benefit him more than the programming at Gateway. It specifically noted the programming included aggression-interruption training, empathy for others, consideration of others' perspectives, improving social skills, getting along with those of different racial backgrounds, a counterpoint program, substance abuse counseling, and schooling. The court concluded, "So for all of those reasons I believe it is appropriate for the safety of the community and appropriate for your rehabilitative needs to send you to [DJF]."

In sum, the juvenile court considered all the proper factors prior to committing minor to DJF. Accordingly, we find no abuse of discretion.

<u>DISPOSITION</u>

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

FIELDS _____

J.

We concur:

McKINSTER _____

Acting P. J.

RAPHAEL _____

J.