Filed 11/16/20  In re Stevens S. CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re STEVEN S., a Person Coming Under the Juvenile Court Law. | B293981 <br><br> (Los Angeles County Super. Ct. No. TJ23116) |
| THE PEOPLE, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> STEVEN S., <br><br> Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Irma J. Brown, Judge.  Affirmed.

Holly Jackson, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Acting Senior Assistant Attorney General, Michael R. Johnsen, Supervising Deputy Attorney General and Blythe J. Leszkay, Deputy Attorney General, for Plaintiff and Respondent.

## INTRODUCTION

The juvenile court declared Steven S. a ward of the court and placed him home on probation based on sustained allegations he committed the offenses of possession of a firearm by a minor (Pen. Code, § 29610) and possession of live ammunition by a minor (Pen. Code, § 29650).  On appeal, he contends that the court abused its discretion in denying his requests for deferred entry of judgment under Welfare and Institutions Code section 790, subdivision (b),[1] and informal probation under section 725, subdivision (a).  We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.    *Background*

On August 10, 2018, the People filed a two-count petition pursuant to section 602 alleging Steven possessed a firearm in violation of Penal Code section 29610 and possessed live ammunition in violation of Penal Code section 29650.

In a report dated August 9, 2018, the probation officer in recommending Steven's detention, stated:  "[T]he minor's behavior in the community poses a significant risk of continued delinquency.  The minor is not enrolled in school, utilizes marijuana, consumes alcohol and engages in gang activity.  He does not have an extensive criminal history.  But, the current charges require[ ] immediate intervention and restriction."  On August 10, 2018, in accordance with section 791, subdivision (a)(3), the People gave Steven written notice that he was eligible

---

[1]    Undesignated statutory references are to the Welfare and Institutions Code.

for "deferred entry of judgment" (DEJ). In a report filed on August 29, 2018, the probation officer concluded: "The minor is a suitable candidate for a grant of DEJ whereby he can obtain services to address his particular needs for gang diversion, substance abuse counseling and family therapy, to name a few." During the contested jurisdiction hearing on August 30, 2018, Jonathan Adamson, the police officer who arrested Steven, testified. Steven did not testify.

B.    *Contested Jurisdiction Hearing*

On August 8, 2018, at 11:30 p.m., Adamson observed Steven, who was 16 years old, standing next to a parked car in the driveway of an apartment complex. Adamson testified that Steven looked "startled" and "frightened" when Steven saw Adamson and his partner approach Steven and his three companions. Adamson observed Steven "duck down behind . . . the [parked] car," and "he was discarding something." In the area where Steven ducked down, Adamson located a firearm containing "two live rounds" of ammunition. Adamson also observed at least three freshly discarded empty beer containers near the firearm. At trial, the People played the video from Adamson's body camera depicting Adamson's encounter with Steven.

After denying Steven's motion to dismiss and hearing the argument of counsel, the court found true both counts. The juvenile court ruled: "While there is no direct evidence, as both sides have argued, I think that the reasonable interpretation of the evidence both by testimony and the viewing of the video and the still photographs is that Steven was discarding the firearm in the position in which it is found. So the court believes that the

3

People did meet their burden and I find counts 1 and 2 to be true beyond a reasonable doubt."

### C.   *Disposition*

#### 1.   *August 30, 2018*

In discussing Steven's disposition with counsel, the juvenile court ruled that DEJ was "no longer available because that's a pre-adjudication disposition." Although it noted that Steven "was an outstanding student," the juvenile court found it had "no current information" about his "educational program" and gave Steven an opportunity to present his "most current school enrollment and attendance." The juvenile court stated: "What you need to know is that the court takes possession of firearms in public by anyone, particularly minors, very seriously. It's a very serious offense. I don't know whether you were involved in the drinking or not, but certainly the two together make it more serious than less serious. So I'm going to put you on the community detention program. . . . House arrest." The juvenile court scheduled a disposition hearing for October 2, 2018.

#### 2.   *October 2, 2018*

At the October 2 hearing, the juvenile court again ruled that DEJ was not available "because the matter was adjudicated. DEJ is available only after an admission." Steven's counsel argued that the court "in special circumstances" could order informal probation under section 725, subdivision (a), "if it felt it really wanted to, but I know the charge, that's not this court's usual practice." The juvenile court observed: "The pre-plea report refers to [Steven] as a gang member . . . that would seem to be consistent with the individuals that he was seen with at the time this offense was committed. . . . A statement attributed to

4

[Steven] is that [the gang] helped him out in middle school, so he's been a gang member ever since. So moving forward [Steven] has had a prior camp commitment. . . . I think he successfully completed probation. . . . [W]hile [Steven] is as smart as he is, he seems not to have been able to make the break in really behaving in such a way that keeps him out of the kind of activity that brings him before the court again. . . . They were drinking beers, there were open containers immediately in the vicinity. I don't know what if any adjustments [Steven] has or is prepared to make with regard to his continuing sort of delinquent profile, gangs, booze, and guns." Steven's counsel further argued: "If the court is leery of Steven's commitment to obeying the law and doing well and continuing to do well in school and stay out of trouble and would like to see him longer on [the community detention program] to prove to the court, there wouldn't be an objection here, and that's because Steven is doing so well and has no other desire but to go to school and help his Mom at home."

At the conclusion of the hearing, the juvenile court ruled: "Given the nature of the charges and the other history that we have discussed I'm not at a camp commitment today, but I would like to see some continuous progress and the next letter from Learning Works [Charter School] with regard to his therapeutic process. I would like another update as to what's he doing in that module and I would just say when camp has not been a dispositional order extended here, [the community detention program] has been [extended]." The juvenile court continued the hearing to October 23, 2018.

### 3. *October 23, 2018*

The probation officer's October 23 report stated that Steven was "doing well" in his classes. "His grade point average [was]

between 'A' and 'B.'" After "three home visits" since the October 2 hearing, the probation officer reported that Steven was "in compliance of his court ordered conditions." The probation officer recommended that the juvenile court terminate the community detention program and release Steven to his mother. At the continued hearing on October 23, 2018, Steven's counsel argued: "With these kind of grades he can do anything he wants to. . . . He has every desire to continue in school and do well. And I think [the school's liaison] can vouch for that, as to how well he has done and has been doing."

The juvenile court found: "The facts and circumstances surrounding the case would suggest that there's still a lot of work and growth to be done in that at the time of the arrest [Steven] was associating with and in an area where gang members have been prevalent. . . . Even though he's had prior benefit of supervision, still there's a lot of work to be done. And maybe he's reached that point at this point where he's focusing on that." The juvenile court declared Steven a ward of the court (§ 725, subd. (b)), placed him home and ordered his care and custody to be under the supervision of the probation officer (§ 727, subd. (a)(3); Cal. Rules of Court, rule 5.790(h)(2)), and terminated the community detention program.

The juvenile court concluded: "Steven, I'm very mindful . . . you've been on probation before. This is a new start. You've been in camp before. . . . If there is any violation, you're gonna end up going back to camp. You apparently did not break the ties that you had before based on the offenses. There was alcohol there, and the testimony suggested there might have been some marijuana involved. . . . It says you self-admitted smoking

6

marijuana and drinking alcohol.  So if you want to stay in the community, then all that is [no] longer acceptable."

Steven timely appealed.

## DISCUSSION

A.    *Applicable Law and Standard of Review*

1.    *DEJ*

Central to the juvenile court's mission are the care, treatment, guidance, and rehabilitation of delinquent juveniles. (§ 202, subd. (b).)  Under certain circumstances, "whenever a case is before the juvenile court for a determination of whether a minor is a person described in section 602 because of the commission of a felony offense," the minor may be eligible for DEJ.  (§ 790, subds. (a), (b).)  Pursuant to DEJ, "'in lieu of jurisdictional and dispositional hearings, a minor may admit the allegations contained in a section 602 petition and waive time for the pronouncement of judgment.  Entry of judgment is deferred. After the successful completion of a term of probation, on the motion of the prosecution and with a positive recommendation from the probation department, the court is required to dismiss the charges.  The arrest upon which judgment was deferred is deemed never to have occurred, and any records of the juvenile court proceeding are sealed.'" (*In re C.W.* (2012) 208 Cal.App.4th 654, 659; accord, *Martha C. v. Superior Court* (2003) 108 Cal.App.4th 556, 558.)

If the prosecuting attorney finds the minor eligible for DEJ, the prosecutor "shall file a declaration . . . and shall make this available to the minor and his or her attorney."  (§ 790, subd. (b).) Thereafter, for the court to consider granting DEJ to an eligible minor, the minor must waive time for the pronouncement of judgment and admit each allegation in the petition.  (§ 791,

7

subd. (a)(3); see *In re D.L.* (2012) 206 Cal.App.4th 1240, 1243 [these provisions "'empower the court, under specified conditions, and upon the minor's admission of the allegations of the petition, to place the minor on probation without adjudging him or her to be a ward of the court'"].)[2] "Upon a finding that the minor is also suitable for deferred entry of judgment and would benefit from education, treatment, and rehabilitation efforts, the court may grant deferred entry of judgment." (§ 790, subd. (b); *In re Luis B.* (2006) 142 Cal.App.4th 1117, 1123; see *In re C.W., supra,* 208 Cal.App.4th at p. 660 ["[o]nce the threshold determination of eligibility is made, the juvenile trial court has the ultimate discretion to rule on the minor's suitability for DEJ"].)

In *In re Kenneth J.* (2008) 158 Cal.App.4th 973, the court held that a trial court need not consider DEJ for a minor "who is advised of his DEJ eligibility, who does not admit the charges in the petition or waive a jurisdictional hearing, and who does not show the least interest in probation, but who insists on a

---

[2] Section 791, subdivision (a)(3), provides: "The prosecuting attorney's written notification to the minor shall also include all of the following: [¶] . . . [¶] . . . [¶] (3) A clear statement that in lieu of jurisdictional and disposition hearings, the court may grant a deferred entry of judgment with respect to any offense charged in the petition, provided that the minor admits each allegation contained in the petition and waives time for the pronouncement of judgment, and that upon the successful completion of the terms of probation, as defined in Section 794, the positive recommendation of the probation department, and the motion of the prosecuting attorney, but no sooner than 12 months and no later than 36 months from the date of the minor's referral to the program, the court shall dismiss the charge or charges against the minor."

jurisdictional hearing in order to contest the charges." (*Id.* at pp. 979-980; see *In re Usef S.* (2008) 160 Cal.App.4th 276, 286 ["we conclude the juvenile court committed no error in failing to hold a hearing to determine appellant's suitability for DEJ once it became clear appellant was not admitting the allegations against him, but rather was insisting on contesting them at a jurisdictional hearing"].)

"[T]he de novo standard of review applies to issues of statutory interpretation." (*In re Carlos H.* (2016) 5 Cal.App.5th 861, 866; see *J.N. v. Superior Court* (2018) 23 Cal.App.5th 706, 714 ["conclusions of law are reviewed de novo"].)

### 2. *Disposition*

Section 725.5 provides, "In determining the judgment and order to be made in any case in which the minor is found to be a person described in Section 602, the court shall consider, in addition to other relevant and material evidence, (1) the age of the minor, (2) the circumstances and gravity of the offense committed by the minor, and (3) the minor's previous delinquent history." Section 725, subdivision (b), provides: "If the court has found that the minor is a person described by Section 601 or 602, it may order and adjudge the minor to be a ward of the court." Section 727, subdivision (a)(2), provides that, other than for certain offenses, "[i]n the discretion of the court, a ward may be ordered to be on probation without supervision of the probation officer." Section 727, subdivision (a)(3), further states: "In all other cases, the court shall order the care, custody, and control of the minor or nonminor to be under the supervision of the probation officer." (See Cal. Rules of Court, rule 5.790(h)(2) ["[t]he court may order the care, custody, control, and conduct of the ward to be under the supervision of the probation officer in

the home of a parent or guardian"].)  The juvenile court may place the minor on formal probation without previous resort to a less restrictive placement.  (*In re Asean D.* (1993) 14 Cal.App.4th 467, 473.)

Alternatively, "[i]f the court has found that the minor is a person described by Section 601 or 602, . . . it may, without adjudging the minor a ward of the court, place the minor on probation, under the supervision of the probation officer, for a period not to exceed six months."  (§ 725, subd. (a).)  Further, under section 782, the court "may set aside the findings and dismiss the petition, if the court finds that the interests of justice and the welfare of the person who is the subject of the petition require that dismissal, or if it finds that he or she is not in need of treatment or rehabilitation."  (See Cal. Rules of Court, rule 5.790(a)(2).)

We review a placement decision for abuse of discretion and will "indulge all reasonable inferences to support the decision of the juvenile court."  (*In re Asean D.*, *supra*, 14 Cal.App.4th at p. 473; accord, *In re Carlos J.* (2018) 22 Cal.App.5th 1, 5; *In re Robert H.* (2002) 96 Cal.App.4th 1317, 1330.)  An appellate court will not lightly substitute its decision for that of the juvenile court and ""will not disturb its findings when there is substantial evidence to support them.""  (*In re Robert H.,* at p. 1330.)  Under the substantial evidence standard of review, an appellate court reviews the record in the light most favorable to the findings of the trier of fact.  (See *In re George T.* (2004) 33 Cal.4th 620, 630-631.)  ""If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also be reasonably reconciled with a contrary finding does not warrant a reversal of the judgment.""

(*Ibid*.)

Finally, "[t]he juvenile court's determination must be tied to the purposes of the juvenile system, which include the protection of the public as well as the rehabilitation of the minor." (*In re Carlos E.* (2005) 127 Cal.App.4th 1529, 1542.)

B.     *The Court Did Not Err in Denying DEJ*

Steven argues, although "current California case law has limited the awarding of DEJ to those minors who admit their guilt before proceeding to a contested adjudication hearing," the court erred in not granting him DEJ because "only 20 days elapsed" from "the time when [Steven] was found eligible for DEJ and the completion of his adjudication hearing."

Section 791, subdivision (a)(3), provides the "court may grant [DEJ] . . . provided that the minor admits each allegation contained in the petition."  After Steven received the People's August 10, 2018 notification that he was eligible for DEJ and the August 29, 2018 probation report recommending DEJ, he did not admit the allegations in the petition as required by section 791, subdivision (a)(3).  Instead, Steven proceeded to a contested jurisdiction hearing on August 30, 2018.  By insisting on a jurisdiction hearing, Steven, in effect, rejected DEJ and removed himself from consideration for DEJ.  Steven does not cite any authority to support his argument that he remained eligible for DEJ after the jurisdiction hearing.  The court properly concluded that Steven was ineligible for DEJ.  (See *In re Spencer S.* (2009) 176 Cal.App.4th 1315, 1322-1323 ["it is clear that a minor must first admit a petition's allegations in order to obtain" DEJ]; *In re Usef S.*, *supra*, 160 Cal.App.4th at p. 286, fn. 3 [after minor "effectively rejected DEJ consideration when he denied the

11

allegations against him and insisted on a contested jurisdictional hearing[,] . . . any duty the juvenile court may have had to determine whether appellant was suitable for DEJ was excused"].)

C. *The Juvenile Court Did Not Abuse Its Discretion in Declaring Steven a Ward of the Court and Placing Him Home on Probation*

Steven argues he "was deserving of informal probation [under section 725, subdivision (a)] based on his glowing reports from school, his perfect attendance and good grades, his voluntary therapy sessions and his full compliance with [the community detention program], among others."

The juvenile court's order declaring Steven a ward of the court and placing Steven home on probation was well within its discretion. The court properly explained the scope of its inquiry: "History always comes into the decision and the court can take into consideration at disposition any factors that it believes to be important for the minor's rehabilitation as well as for appropriate dispositional options and terms and conditions of probation." (See *In re Carlos J.*, *supra*, 22 Cal.App.5th at pp. 6-7 ["'juvenile court is required to 'consider "the broadest range of information" in determining how best to rehabilitate a minor and afford him adequate care'"]; *In re Walter P.* (2009) 170 Cal.App.4th 95, 100 ["[i]n fashioning the conditions of probation, the juvenile court should consider the minor's entire social history in addition to the circumstances of the crime"].)

On August 30, after finding both counts true and reading the probation officer's report, the juvenile court noted that Steven "was an outstanding student." The court gave Steven an opportunity to present his "most current school enrollment and

12

attendance." However, the court also expressed concern about the "very serious offense" of possession of a firearm in public. At the October 2 hearing, the juvenile court reviewed the updated school information and questioned Steven about his school courses. After discussing Steven's gang membership and his prior camp commitment, the court acknowledged that Homeboy Industries, the operator of Steven's school, "gears their programs to reforming troubled gang members." Taking into consideration the updated probation officer's report and questioning what adjustments Steven was "prepared to make" in light of his continued gang involvement, on October 2, the juvenile court again continued the hearing to obtain information from Steven's school regarding "his therapeutic process."

On October 23, after considering the additional information and hearing argument from Steven's counsel, the court declared Steven a ward of the court, placed him home, and ordered his care and custody to be under the supervision of the probation officer. In addition to the section 725.5 factors, the juvenile court took into account Steven's school record and his "therapeutic process." Given Steven's continued gang involvement, his "prior camp commitment" and probation, and the seriousness of the offenses, the juvenile court found that "there's still a lot of work and growth to be done." In furtherance of the policies set forth in section 202, the juvenile court reasonably declared Steven a ward of the court under section 725, subdivision (b), and ordered his care and custody to be under the supervision of the probation officer pursuant to section 727, subdivision (a)(3), and California Rules of Court, rule 5.790(h)(2). (See § 202, subd. (b) ["[m]inors under the jurisdiction of the juvenile court as a consequence of delinquent conduct shall, in conformity with the interests of

13

public safety and protection, receive care, treatment, and guidance that is consistent with their best interest, that holds them accountable for their behavior, and that is appropriate for their circumstances" ]; Cal. Rules of Court, rule 5.790(h) ["[t]he court may make any reasonable order for the care, supervision, custody, conduct, maintenance, support, and medical treatment of a child adjudged a ward of the court"]; see also *In re Greg F.* (2012) 55 Cal.4th 393, 417 ["[i]n determining a child's best interests, the juvenile court must examine all the relevant circumstances"].)

Under these circumstances, the juvenile court's disposition order was well within its discretion.

## DISPOSITION

The judgment is affirmed.

DILLON, J.*

We concur:

PERLUSS, P. J.

SEGAL, J.

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.